LEARY et al. v. MURRAY.

(Circuit Court of Appeals, Third Circuit. February 17, 1910.)

No. 59 (1,236).

1. PRINCIPAL AND SURETY (§ 175*)—RIGHTS OF SURETY—RECOURSE TO PRINCIPAL.

The fact that the surety on a stipulation for the release of a vessel libeled for salvage took from its principal an assignment of the policies of insurance on the vessel as collateral security for its liability did not, either legally or equitably, by estoppel or otherwise, relieve the principal from his primary liability on the bond, or his contingent obligation, express or implied, to save his surety from loss by reason of its suretyship.

[Ed. Note.—For other cases, see Principal and Surety, Dec. Dig. § 175.*]

2. INSURANCE (§ 479*)—MARINE INSURANCE—CONSTRUCTION OF POLICY—AMERICAN CLAUSE.

The American clause in marine policies of insurance, providing that, in case there is prior insurance, the insurer in such policy "shall be answerable only for so much as the amount of said prior assurance may be deficient towards fully covering the vessel hereby assured," and shall return the premium on the excess, and that in case of subsequent insurance the insurer therein shall nevertheless be answerable for the full extent of the sum insured, is applicable only to cases of double insurance, where the aggregate of the policies exceeds the stated value of the property insured, in which case, if the prior insurance equals such value, the subsequent policy does not attach, and, if less, the subsequent policy attaches only to the extent of the deficiency. In either case the status of the subsequent insurer is determined at the date of the risk, and is not deferred to the occurrence of a loss, nor affected by the amount of such loss, and in case of a partial loss the insurers are liable pro tanto in proportion to the amounts for which their several policies attached.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1244, 1245; Dec. Dig. § 479.*]

3. DAMAGES (§ 3*)—INJURIES FOR WHICH COMPENSATION CANNOT BE RECOVERED—EXERCISE OF RIGHT OF APPEAL.

An appellate proceeding is as much the right of a litigant as the proceeding in the court of first instance, and an appellant cannot be charged with liability because of a loss suffered by other parties in interest through the insolvency of a third person, which occurred pending the appeal.

[Ed. Note.—For other cases, see Damages, Dec. Dig. § 3.*]

4. ADMIRALTY (§ 98*)—SUIT IN REM—FORM OF EXECUTION—EFFECT OF RELEASE OF VESSEL ON STIPULATION.

Where a libeled vessel is released on stipulation pursuant to admiralty rule 51, which provides that in such case execution shall be by the same

process as on decrees in personam, and especially where the stipulation expressly provides that if it remains in force execution may issue at one and the same time against any and all parties, on payment of the decree by the surety it is entitled to a writ of fieri facias against the principal.

[Ed. Note.—For other cases, see Admiralty, Dec. Dig. § 98.*]

Appeal from the District Court of the United States for the Eastern District of Pennsylvania.

Suit in admiralty by John J. Leary and James McMasters, owners of the naphtha launch White Seal, against the tug Lizzie Crawford, and cross-libel by George F. Murray, master of the Crawford. On petition by libelants against the United States Fidelity & Guaranty Company. From the decree, libelants appeal. Affirmed.

See, also, 166 Fed. 640.

J. L. Wetherill and J. H. Brinton, for appellants.
Thomas Stokes and George Wharton Pepper, for appellee.

Before GRAY, BUFFINGTON, and LANNING, Circuit Judges.

GRAY, Circuit Judge. On July 1, 1904, a libel in rem was filed by John J. Leary and James McMasters, owners of the launch "White Seal," against the tug "Lizzie Crawford," for unlawfully removing the launch from a jetty in the Delaware river, upon which she had run.

On July 27, 1904, George F. Murray, master of the tug "Lizzie Crawford," filed a cross-libel against the "White Seal" for alleged salvage services in so removing the launch.

After the launch "White Seal" was attached in this cross-libel suit, Leary, as one of her owners and claimants, wished to release her, and it was accordingly agreed between the parties that a stipulation for value—of $3,000—should be entered into. He then, on August 31, 1904, applied to United States Fidelity & Guaranty Company, the use appellee, to execute this stipulation as surety, and signed an application to the company for it, by which, in consideration of the Guaranty Company's suretyship, he covenanted, among other things,

"to indemnify and keep the said Guaranty Company indemnified from and against any and all loss, costs, charges, suits, damages, counsel fees and expenses of whatever kind or nature, which said Guaranty Company shall or may, at any time sustain or incur or be put to, for or by reason, or in consequence of said Guaranty Company's having executed said bond."

The launch "White Seal" was insured in three companies, the Home Insurance Company, the United States Lloyds, and the China Mutual Insurance Company, as follows: A policy in the Home Insurance Company, dated July 20, 1903, for $1,500; one in the China Mutual Insurance Company, dated June 11, 1904, for $3,000; and one in the United States Lloyds, dated June 16, 1904, for $1,500. These policies fully insured the launch, which was valued in each of them at $6,000.

On August 1, 1904, the three Insurance Companies had paid to Leary and McMasters, in amounts proportionate to their insurance respectively, the sum of $4,050, in settlement of all claims growing out of the accident to the launch, except the pending salvage claim. As the Guaranty Company was about to become surety for the claim—

ants in the matter of this salvage claim, Leary and McMasters, on September 9, 1904, assigned to said company, as collateral security for its liability, by reason of its suretyship, the three policies of insurance above mentioned. On November 11, 1904, Leary, as principal, and the Guaranty Company, as surety, executed the stipulation for value in the sum of $3,000, releasing the launch:

> "Upon condition, that whereas a suit is now pending in the said court for salvage wherein the said George F. Murray, master, etc., is the libelant. against the naphtha launch "White Seal." and the said John J. Leary is claimant: Now, if the said claimant shall well and truly abide by all orders, interlocutory or final, of the said court. and of any appellate court in which the said suit may hereafter be depending, and shall fulfill and perform the judgment or decree which may be rendered in the premises, and also pay all such costs and charges as shall be ordered and adjudged to be paid on        part, then this stipulation shall be void; otherwise in force, and execution may issue, by virtue thereof, at one and the same time against any or all the parties to this stipulation."

The two cases were heard together, and a decree was entered for salvage in favor of the tug "Lizzie Crawford," in the sum of $850 and costs.

From this decree an appeal was taken by Leary, one of the claimants, in January, 1908. The appeal-bond was filed January 16, 1908, and was executed by the Guaranty Company alone, it having waived the signature of Leary. The bond recited that Leary and McMasters had appealed to the United States Circuit Court of Appeals for the Third Circuit, and was conditioned as follows:

> "Now, if the appellants prosecute their appeal to effect, and answer all damages and costs, if they fail to make their plea good, then this stipulation shall be void; otherwise to be and remain in full force and virtue."

The claim for salvage having been liquidated by the decree of the District Court at $850 and costs, the appeal-bond was taken in the sum of $1,200, to cover the amount of said decree and any possible costs and charges thereunder, and by reason of the appeal. On January 30 and 31, 1908. the three Insurance Companies liquidated their possible liability to the Guaranty Company, in case the decree for salvage was affirmed by the appellate court, by giving the said company their bonds, indemnifying it from loss by reason of its suretyship on the appeal-bond. These bonds, respectively, were limited in amount in the proportion to the whole liability of $1,200 under the appeal-bond, as the amount of the policy of each company bore to the value of the vessel. The bond, therefore, of the Home Insurance Company was for $300, the China Mutual for $600, and the United States Lloyds for $300. On June 28, 1908, the Circuit Court of Appeals affirmed the decree of the District Court. Thereby, the master of the "Lizzie Crawford" became entitled to receive, including costs, the sum of $1,188.92. This sum, the Guaranty Company paid, and received from the Home Insurance Company and United States Lloyds $297.23 each, as their proportionate shares thereof due on their bonds. The China Mutual Insurance Company had become insolvent, and its proportionate share, $594.46, has never been paid.

On the payment of the amount due, the libelant in the salvage suit

marked the decree to the use of the United States Fidelity & Guaranty Company. This company then demanded payment from Leary, and upon his failure to reimburse, it issued a fieri facias and attached the "White Seal." Leary, on August 31, 1908, filed his petition, asking that the "judgment" be marked satisfied, and that the writ of fieri facias be dissolved. By agreement of counsel, Leary paid the amount due into court, and obtained an order releasing his launch from custody and

"a rule to show cause why the execution issued in said action should not be stayed, and the decree marked satisfied of record, or such other disposition of the matter as the court may hereafter direct."

In support of the rule, several depositions were submitted by the appellants, to show, first, that the appellee was estopped from enforcing appellants' bond by the said writ of fieri facias, or otherwise, by reason of its alleged knowledge that appellants had no further interest in the case, after settling with the Insurance Companies on August 1, 1904, and because it knew, as was alleged, that the Insurance Companies alone were interested in the further prosecution of the suit, and were the real parties in interest; and second, because, by taking counter-bonds of indemnity from the Insurance Companies, it limited the liability of the latter companies and reduced the value of its security.

The first ground above stated was the only one urged by the petitioners for the rule in the court below, upon which the court was asked to quash the said writ of fieri facias and order the decree in the salvage suit to be satisfied. In its answer to the petition for the rule, the Guaranty Company denied that it knew that Leary had no interest in the case after August 1, 1904, and averred that the record shows that Leary had an interest in the suit after this date, as one of the co-obligors with the Guaranty Company in the bond filed in the salvage suit, to enable Leary to obtain possession of his launch.

The mere assignment of the policies of insurance to the Guaranty Company, as collateral security for their liability as surety on his bond, did not either legally or equitably, by estoppel or otherwise, relieve Leary from his primary liability on his bond, or his contingent obligation, express or implied, to save his surety, the Guaranty Company, from all loss and damage by reason of its suretyship; much less could any understanding or arrangement between Leary and the Insurance Companies, to which the Guaranty Company was not a party, work any estoppel upon it in the premises.

Judge McPherson, in the court below, discharged the rule and ordered that the money in the registry of the court be paid to the use libelant, the United States Fidelity & Guaranty Company. From this decree, the present appeal is taken. In his opinion, Judge McPherson thus disposes of the first ground, and the only one as it appears, urged by the petitioners, either in their petition or argument on the rule, in the court below:

"This is an effort by the owners of the launch to use parol testimony for the purpose of escaping the consequence of two written contracts, namely, the application to the surety company entered into on August 31, 1904, and the stipulation entered into on November 11, of that year. I have read and con-

sidered the depositions taken in support of the rule, and I do not think it nec-
essary to say more than pronounce them insufficient to accomplish the result
sought by the respondents.  No doubt the surety company knew that the in-
surance companies were interested in the action from the beginning, for it
took their obligations as collateral security for its own undertaking, but in my
opinion the evidence does not establish the fact that it accepted the companies
as a substitute for the present respondents, and agreed to look only to the
companies for reimbursement in case it should be obliged to pay the salvage
that was demanded by the tug.  Such payment in part, it has been compelled
to make, and it was therefore entitled to have the decree marked to its use
and to issue execution thereon to recover this sum from its principal, upon
whom rested the primary obligation to pay the salvage award."

In this opinion, we concur.

We turn, then, to the other proposition now contended for by the
appellants, viz., that by taking the counter-bonds of indemnity from
the Insurance Companies, the Guaranty Company limited the liability
of the latter companies and reduced the value of the security held by it.
It will be remembered that the appellants, as owners of the damaged
launch, had settled with the three Insurance Companies, by receiving
from them a payment aggregating about $4,050, in full satisfaction of
all claims and demands on account of their loss, "with the exception of
the pending salvage claim of the tug "Lizzie Crawford." The total
loss thus settled for was paid by the three Insurance Companies re-
spectively in the proportion which the amount covered by each policy
bore to $6,000, the total insurable value of the launch.  The Home
Insurance Company, therefore, whose policy was for $1,500, contrib-
uted one-fourth of the loss, or $1,006.25;  the China Insurance Com-
pany, whose policy was for $3,000, contributed one-half of the loss,
or $2,012.50;  and the United States Lloyds, whose policy was for
$1,500, contributed one-fourth of the loss, or $1,006.25;  making a
total of $4,025.  On the basis on which this settlement was made, each
Insurance Company was still liable in the same proportion for what-
ever sum should be decreed against the insured in the salvage suit, to
the extent of the balance covered by the policy, after deducting the
amount already paid.  So that the Home Insurance Company was
bound to contribute to the reimbursement of any amount paid by way
of salvage, by the claimants or their surety, to the extent of $493.75,
or their proportionate part thereof;  and the China Mutual Insurance
Company was bound to contribute to the reimbursement of any amount
paid by way of salvage, by the claimants or their surety, to the extent
of $987.50, or their proportionate part thereof;  and the United States
Lloyds were bound to contribute for the same purpose, the sum of
$493.75, or their proportionate share thereof.

This was the situation when, on September 9, 1904, the appellants
assigned these policies to the Guaranty Company, as collateral security
for the bond it was about to execute.  In January, 1908, after the
decree of the court below, fixing the amount of salvage at $850 and
costs, the appeal-bond given by the Guaranty Company, for $1,200,
made that sum the limit of any liability on its part, and therefore the
limit of the aggregate amount that could be demanded, by way of in-
demnity, from the Insurance Companies.  Accordingly, the indemnity
bonds already referred to were executed by the three Insurance Com-

panies, each for its part of the $1,200, in the proportion above indicated, the bond of the Home Insurance Company being for $300, that of the China Mutual for $600, and the United States Lloyds for $300. This, of course, was the ultimate and extreme liability of each of the companies upon their policies held as collateral by the Guaranty Company upon the basis adopted by the appellants in their settlement with the said Insurance Companies. If the liability of these Insurance Companies was correctly represented by the method of settlement here adopted, no complaint can be made by the appellants on the ground that the China Mutual Company, after the giving of its bond of indemnity, became insolvent and has never paid any part of the sum for which it therein became liable. Appellants, however, contend that, by virtue of the so-called "American clause," contained in each of the aforementioned policies, the Home Insurance Company was liable for any loss to the full amount of the sum named in the policy, and not to merely a pro rata share of said amount.

This clause, as contained in each of the policies, is as follows:

"Provided always and it is hereby further agreed that if the said insured shall have made any other insurance upon the vessel aforesaid, prior in day of date to these policies then the said assurers shall be answerable only for so much as the amount of said prior assurance may be deficient towards fully covering the vessel hereby assured and the said assurers shall return the premium on so much of the sum by them assured as they shall by such prior assurance be exonerated from. And in case of any assurance upon said vessel subsequent in day of date to this policy the said assurers shall nevertheless be answerable for the full extent of the sum subscribed hereto without right to claim contribution from said subsequent assurers and shall accordingly be entitled to retain the premium by them received in the same manner as if no subsequent assurance had been made."

It seems somewhat remarkable that this important clause, which for so long a time has been found in American policies, should not have more often been the subject of interpretation and construction by the courts. There is an almost utter absence of such an interpretation in the cases cited by either the appellants or appellee. Whiting v. Independent Mut. Ins. Co., 15 Md. 297, decided in 1859, does, however, clearly and instructively discuss the origin and meaning of this so-called "American clause." The same may be said also of the case of American Ins. Co. v. Griswold, 14 Wend. (N. Y.) 399.

It is to be noted that the language of the policy containing this clause is, that the "assurers shall be answerable only for so much as the amount of said prior assurance may be deficient towards *fully covering the vessel hereby assured.*" The appellants, however, construe the clause as if the language had been, "shall be answerable only for so much as the amount of prior insurance shall be deficient towards *fully covering the loss sustained,*" which is quite a different thing from fully covering the value of the vessel. So that, the stipulation is in effect, as said by the court in the Maryland case,

"that if there be a prior insurance, the underwriter shall not be answerable on a subsequent policy, except so far as the amount at risk may remain uncovered by the previous insurance; that is, if the prior policy is sufficient in amount to cover the whole value of the thing at risk, then the subsequent policy does not attach, the underwriter is at no risk, and the premium is to be returned. So far as the amount at risk remains uncovered by prior insurance, a subse-

quent policy does attach, and the second underwriter is pro tanto liable upon his policy, and entitled pro tanto to retain the premium. It will be observed, that the stipulation is not, that the underwriter is to be exempt from liability, if there has been prior insurance to an amount sufficient to cover the loss, but that he is not answerable at all upon his contract, unless there be something to which his policy can attach remaining uncovered by prior insurance. When we look at the latter part of the clause, which provides for the case of a subsequent insurance, the meaning of the whole is alike clear and free from difficulty."

In other words, the clause under discussion was meant to apply to cases of double insurance; that is, where the first insurance or divers insurances upon the same interest and the same subject-matter and against the same risks, in favor of the same assured, are made in proportions exceeding the value of the thing insured. The determination of the status of the second insurer is made, therefore, at the commencement of the risk and is not deferred to the occurrence of a loss and the ascertainment of the amount thereof. Joyce, in his work on Insurance (section 2496), says:

"If, however, several policies of different dates are issued upon a ship, but the entire amount does not exceed the estimated value of the property insured, then it is held that the insurers are all liable, pro rata. The 'American clause' is held only to apply in cases of double insurance."

This seems to us the most philosophical interpretation of the clause in question, and one which answers the obvious purpose of such a provision, as applied to marine insurance. On the contrary, the interpretation contended for by the appellants leads to the undesirable result that the second insurer is discharged in all cases where the amount of the loss does not exceed the amount insured by the prior policy, and in no case is liable for more than the excess.

It is significant, also, that the settlement made by the appellants with the Insurance Companies for their loss, ignored the interpretation they now put upon this proviso in the policies. It would seem, also, that there is an express undertaking in the policy of the Home Insurance Company that it should pay only a pro rata share of a partial loss, as it contains this unequivocal stipulation:

"In lieu of deductions, new for old, it is hereby understood and agreed that in case of claim for damage under the policy * * * this company shall be liable only for the excess of same over the sum of one hundred dollars ($100.00) and in all cases in proportion as the sum herein insured bears to the agreed value of said vessel, as herein stated."

It is contended, however, by the appellee, and in this contention we agree, that even if the meaning of the clause was as appellants contend, as a matter of fact the action of the Guaranty Company, in taking the counter-bonds of indemnity from the Insurance Companies, did not diminish the Guaranty Company's security. Of course, if this clause is to apply, it must be considered with reference to the loss, taken as a whole, as the loss by reason of the salvage decree was only the smaller part of the loss for which settlement was made. The total loss, including the $4,050 paid to the appellants, and the salvage loss of $1,188.92, makes a total loss of $5,238.92. The amount of insurance prior to that of the Lloyds, covered by the policies of the Home

and the China Mutual Companies, was $4,500. The Lloyds were therefore liable under their policy for $738.92, but as they had already paid $1,006.25 on their settlement with the appellants, nothing more could be claimed from them. The failure of the China Mutual did not alter the position of the Lloyds, for if the latter policy did not attach when the former company was solvent, by reason of the "American clause," it would not attach by reason of its insolvency. Ryder v. Phœnix Ins. Co., 98 Mass. 185. The Lloyds, therefore, could not have been held liable for any further contribution to the loss, according to appellants' theory, unless the Guaranty Company had received their counter-bond of indemnity. So that, if this bond had not been taken, the loss which would have to be borne by appellants would have been $738.92, instead of $594.46, as at present.

There was therefore no depreciation of the value of the collateral while in the hands of the appellee, to the injury of the appellants, and no injury was suffered by appellants by reason of the Guaranty Company having taken the counter-bonds of indemnity from the Insurance Companies for an amount sufficient to cover the liability fixed and liquidated by the decree awarding salvage to the libelant in the cross-libel. The indemnity taken from the three companies at that time was sufficient to secure the Surety Company. It was in the nature of a settlement of liability of the three companies for a contingent but ascertained loss. It was not for the Surety Company to anticipate the insolvency of one of the companies whose policies had been given to it as collateral by the appellee. It acted in good faith and with reasonable business prudence in taking the indemnity bonds.

The suggestion that the Surety Company was responsible for the delay occasioned by the taking of the appeal, and the consequent loss by reason of the insolvency of the China Mutual in the meantime, would, if concurred in, penalize parties who sought the adjudication of their rights in the courts open to all citizens for that purpose. An appellate proceeding is as much the right of a litigant as the proceeding in the court of first instance. Conceiving, as we do, that there is no question as to the liability of the appellants to the Guaranty Company on their stipulation for value in the salvage suit, as well as upon the appeal bond, we are not prepared to consider with favor the technical objection that a writ of fieri facias could not appropriately issue on a decree in rem. The property in this case having been delivered up on stipulation, as provided by rule 51 of the Admiralty Rules of the District Court, the "execution shall be by the same process as on decrees in personam." It should also be noted that there is an express agreement in the stipulation for value, that if the same be not void, it shall remain in force "and execution may issue by virtue thereof at one and the same time against any and all parties to this stipulation." This provision, under the rules of practice, would be available to the Guaranty Company, as use libelant, as against the principals in the stipulation.

The decree of the court below is therefore affirmed.