PENINSULAR & O. S. S. CO. v. ATLANTIC MUT. INS. CO.

(District Court, E. D. Pennsylvania. January 4, 1911. On Rehearing, February 4, 1911.)

No. 8.

1. INSURANCE (§ 474*)—MARINE INSURANCE—OPEN POLICY—PROOF OF VALUE.
    A policy of insurance on a ship, although limited to the single risk of fire, in which the valuation clause in the form used is not filled out, is an open or unvalued marine policy under which in case of loss the value of the vessel is a matter of proof, the value to be taken as of the time of the commencement of the risk.
    [Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1239; Dec. Dig. § 474.*]

2. INSURANCE (§ 476*)—MARINE INSURANCE—EXTENT OF LIABILITY OF INSURER.
    Under a policy of marine insurance on a vessel, whether a valued or open policy, where the value of the vessel exceeds the amount of the insurance, the owner is deemed a co-insurer as to such uninsured part, and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the underwriter is only liable for such proportion of the loss as the amount of the insurance bears to the value of the vessel.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1242; Dec. Dig. § 476.*]

**3.** Insurance (§ 479*)—Marine Insurance—Extent of Liability of Insurer—American Clause.

The extent of the liability of a marine insurer under a policy containing the American clause that, "in case of any insurance upon the said premises subsequent in day of date to this policy, the said * * * company shall nevertheless be answerable for the full extent of the sum by them subscribed hereto without right to claim contribution from such subsequent assurers. * * *" cannot be enlarged or affected by the contracts of subsequent insurers, but is the same whether or not any subsequent insurance is written.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1244, 1245; Dec. Dig. § 479.*]

**4.** Insurance (§ 599*)—Payment—Mode—As Between Co-Insurers.

Where liability for a portion of a loss on a vessel was in dispute between successive insurers, a contract between the company issuing the first policy, which admitted its liability for and paid a part of the loss, and the owner, by which the company lent the owner the sum in dispute, to be repaid in case it was recovered from the other insurers, is valid, and does not amount to a voluntary payment of the remainder of the loss which prevents a recovery by the owner from the other insurers.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1495; Dec. Dig. § 599.*]

**5.** Insurance (§ 171*)—"Open Policy"—"Unvalued Policy."

An open or unvalued policy is one in which the value of the interest at risk is not fixed in the policy, but is estimated by a certain standard, and in case of loss is made out by proof.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 171.*

For other definitions, see Words and Phrases, vol. 6, pp. 4987, 4988.]

**6.** Insurance (§ 474*)—"Insurable Value."

The insurable value of a ship in an open policy is what she is worth to her owner at the port where the voyage commences, including stores.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 474.*]

In Admiralty. Action by the Peninsular & Occidental Steamship Company against the Atlantic Mutual Insurance Company. Decree for libelant.

Francis S. Laws, for libelant.

Theodore M. Etting, for respondent.

J. B. McPHERSON, District Judge. On May 11, 1902, the steamship Florida, then owned by the libelant, was injured by fire while upon a voyage from Philadelphia to Port Tampa. The loss was afterwards adjusted at $9,660, and this amount is agreed to be correct. In the present action the libelant seeks to recover part of the loss from the Atlantic Mutual Insurance Company; and the defense is made, either that the company is not liable at all, or, in any event, is only liable for less than is claimed. Both defenses depend mainly upon the effect of a prior policy issued by the Federal Insurance Company, and this must therefore be construed.

*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

A preliminary word should be said upon a question of evidence. The Federal policy was not produced, and the copy that was offered is objected to on the ground that the loss of the original is not sufficiently accounted for, and also because the correctness of the copy does not sufficiently appear. Without discussing the evidence upon these points, I think it enough to say that I have considered it carefully, and do not regard the objections as well taken. A proper and adequate search, but without result, was made for the original, and the correctness of the copy seems to be clearly established.

What kind of policy then did the Federal Company issue? In the respondent's opinion it was an ordinary fire policy, but this contention cannot be sustained. In all essentials it was identical with the respondent's policy, and this is undoubtedly a contract of marine insurance. The Federal policy was limited, as such insurance is often limited, to the single risk of fire. The amount insured was $40,000, but, contrary to the usual custom, the value of the vessel was not stated. There was a valuation clause, but the blank for the amount was not filled in:

"The said vessel. tackle. etc., hereby insured are valued at ———— without any further account to be given by the assured to the assurers or any of them for the same."

Why the valuation was omitted does not appear in the evidence, and conjecture is not permissible. A subsequent clause provides:

"That, in case a total loss shall be claimed for or on account of any damage or charge to the said vessel, the only basis of ascertaining her value shall be her valuation in this policy; and, if not valued herein, then her actual value at the time of the inception of this risk at the port to which she then belonged."

Although this clause is not now in point, since it does not profess to govern the adjustment of a partial loss, I quote it because a similar provision is implied by the rules of law relating to marine policies. Under these rules the contract was an open or unvalued policy. "An open policy is one in which the value of the interest at risk"— in this case the ship—"is not fixed in the policy, but is estimated by a certain standard, and in case of loss is made out by proof." 1 Arnould, Marine Insurance (7th Ed.) § 362.

"With regard to the ship, her insurable value in an open policy is what she is worth to her owner at the port where the voyage commences, including stores," etc. Id. § 365.

"An open or unvalued policy is one in which the value of the subject-matter is not fixed by the policy." 26 Cyc. 573, § e II.

"Where the policy is not valued, the basis upon which the underwriters are to pay is left open, and the real value must be proved by the insured in each case. In ascertaining the value of a ship under an open policy the value is to be taken as of the commencement of the risk." Id. 675, § b I. See, also, 19 Am. & Eng. Ency. (2d Ed.) 1046, XII, 1, b.

As required by these rules, the libelant offered testimony to prove the value of the Florida at the beginning of the risk, and I find as a fact that such value has been satisfactorily ascertained to be $75,000.

If, therefore, there had been no other policy upon the vessel than the policy of the Federal Company, that company would certainly have been liable for only $^{40}/_{75}$ of the loss. This is the well-established rule in marine insurance.

"It is a general rule peculiar to contracts of marine insurance that, where the value of the insured's interest in the property insured exceeds the amount of the insurance, the insured is deemed a co-insurer as to such uninsured part, and the underwriter is only liable for such proportion of the loss as the amount of the insurance bears to the value of the insured's interest." 26 Cyc. 672 (f), and many cases stated in the notes. See, also, 19 Am. & Eng. Ency. (2d Ed.) 1061, 5a; Richards, Insurance (3d Ed.) § 50; Western Assur. Co. v. Transportation Co., 68 Fed. 923, 16 C. C. A. 65.

Has the Federal Company's liability been increased by the fact that several other policies upon the vessel were afterwards taken out? The dates and amounts are as follows: The Federal policy was issued in July, 1901, and on May 2 and 6, 1902, the Atlantic Mutual issued two marine policies aggregating $30,000, covering inter alia loss by fire. On May 6th the St. Paul Insurance Company issued a similar policy of $2,500; the Ætna Insurance Company, a policy of $5,000; the British-American, a policy of $7,500; and the Insurance Company of North America, a policy of $5,000. These were all valued policies, and, except that they covered maritime risks generally, including the risk of fire during a voyage, their provisions are identical with the policy issued by the Federal Company, with the further exception that in all these the value of the vessel is fixed at $50,000. Each of these policies contains also the prior insurance clause as follows:

"* * * It is hereby further agreed that if the said assured shall have made any other assurance upon the premises aforesaid, prior in day of date to this policy, then the said ——— insurance company shall be answerable only for so much as the amount of such prior assurance may be deficient towards fully covering the premises hereby assured; and the said ——— insurance company shall return the premium upon so much of the sum by them assured as they shall be, by such prior assurance, exonerated from."

Manifestly, taking all the policies together, the Federal Company is primarily liable, and whatever this liability is must first be exhausted before the later underwriters can be called upon to pay. At this point the first defense is encountered, namely, that the subsequent underwriters are not liable at all. This defense rests partly upon the position that the Federal policy is ordinary fire insurance in the sum of $40,000, and must therefore bear the whole loss—a contention that must fail as soon as the policy is ascertained to be a contract of marine insurance—and partly on the following additional clause of the Federal policy:

"And in case of any insurance upon the said premises subsequent in day of date to this policy, the said Federal Insurance Co. shall nevertheless be answerable for the full extent of the sum by them subscribed hereto without right to claim contribution from such subsequent assurers, and shall accordingly be entitled to retain the premium by them received in the same manner as if no such subsequent assurance had been made."

I am unable to agree with the respondent's argument concerning the effect of this clause. In my opinion it means simply that the full liability of the Federal Company shall first be exhausted before subsequent underwriters may be called upon, and is not intended to decide the question how large that company's liability shall be. It would I think be an unusual construction that would enable the insured and the subsequent underwriters to increase the liability of the Federal Company by making agreements to which the Federal Company was not a party and with which it had no concern. For example, if there had been no subsequent insurance, the liability of the Federal Company would certainly be only $40/75$ of $9,660. But, because subsequent insurance does exist, the Federal Company's liability is said to be automatically increased to $75/75$ of the loss, although its contract with the insured is limited by the law of marine insurance to the smaller fraction. If the Federal Company's policy had expressly valued the ship at $75,000, the subsequent insurers would have had plain notice that their own contracts would apply to the part that was left uninsured; and the fact that the policy did not expressly value the ship only varied the notice far enough to declare that the precise fraction for which the Federal Company was liable could only be definitely fixed after the value of the vessel should be authoritatively ascertained. None of the cases cited by the respondent sustains the contention that the Federal policy must bear the whole loss. They hold that the prior insurance clause limits the risk that is accepted by the subsequent underwriter, and about this there can be no dispute; but they do not decide the present controversy. Whatever risk is not covered by the first policy is covered by those that are later; but where the first policy is unvalued, or open, the precise amount covered by the later policies is necessarily left for future determination. In Ryder v. Insurance Co., 98 Mass. 185, the history of the American clause is given by Justice Gray, then on the Supreme Judicial Court of Massachusetts. See, also, Gross v. N. Y., etc., Co. (D. C.) 107 Fed. 519; Peters v. Ins. Co., 5 Serg. & R. (Pa.) 473; Macy v. Ins. Co., 9 Metc. (Mass.) 360, 361; Seamans v. Loring, Fed. Cas. No. 12,583, p. 925; McAllister v. Hoadley (D. C.) 76 Fed. 1000; 26 Cyc. 601, § 8 et seq. I have nowhere been able to find any decision to the effect that the extent of the first insurer's liability can be affected by the subsequent policies. The liability of any insurer, whether prior or subsequent, must depend upon his own contract with the insured, and the action or agreement of a third party cannot vary it. Ins. Co. v. Griswold, 14 Wend. (N. Y.) 399, and especially the following language of Chancellor Walworth on pages 482 and 483:

"If the object of the American clause was to restore this ancient rule of apportionment between the underwriters in successive policies as it originally existed in the mercantile law of England as well as the rest of Europe, it was hardly possible to do it in more appropriate and explicit language than is used in the last paragraph of this clause. That language is that in case of an insurance subsequent in date to the first policy the underwriters in the first policy 'shall, nevertheless, be answerable for the full extent of the sum by them subscribed, without right to claim contribution from such subsequent assurers, and shall, accordingly, be entitled to retain the premium by them received, in the same manner as if no such subsequent assurance had

been made'; that is, that they are to have no right to claim a contribution from the subsequent assurers, and are to be answerable to the assured in the same manner as if the subsequent insurance had not been made, as well as to retain the premium in the same manner. It appears to be impossible, therefore, under this policy, that the circumstance of there being subsequent policies underwritten by others could make any difference as to the apportionment of the loss as between the underwriter in the first policy and the assured, or those who represented the insurable interest in the goods on board at the time of the loss, not covered by that policy."

The liability of the Federal Company being thus limited to $^{40}/_{75}$ of the loss, or $5,152, it follows that the subsequent policies covered the remaining $^{35}/_{75}$, or $4,508. This amount is to be apportioned among them; but, as these policies are all valued and the same amount ($50,000) is fixed in each, the apportionment among themselves is to be adjusted upon that basis. The Atlantic Company is therefore liable for three-fifths; the St. Paul for one-twentieth; the Ætna for one-tenth; the British-American for three-twentieths; and the Insurance Company of North America for one-tenth, or $2,704.80, $225.40, $450.80, $676.20, and $450.80, respectively.

A further defense remains to be considered. After the loss was adjusted the Federal Company conceded its liability for $5,152, and paid that sum to the libelant. It denied liability for the remainder; but, as the subsequent underwriters took the same position and as litigation was obviously necessary before the question could be determined, the following arrangement was made between the Federal Company and the libelant. The company lent the libelant the remainder of the sum at which the loss had been adjusted upon an agreement evidenced by the following receipt:

"Received of Chubb & Son 4460 86.100 dollars, as a loan without interest and repayable only to the extent of any net recovery we may receive as the result of the suits brought by the Peninsular & Occidental Steamship Company against the Insurance Company of North America, the St. Paul Fire and Marine Insurance Company, the Ætna Insurance Company, the British-American Assurance Company and the Atlantic Mutual Insurance Company, to recover the loss on steamer 'Florida' due to fire on or about May 11th, 1902."

It is argued that this transaction was a voluntary payment of the remainder of the loss which prevents recovery in the present action; and Deming v. Merchants', etc., Co., 90 Tenn. 331, 17 S. W. 89, 13 L. R. A. 518, et seq., is cited to support this proposition. As I read that case, it does not so decide. There a loan in form was made and was held to be in reality a voluntary payment, but the ruling is expressly put upon the ground that the insurance company making the payment had conceded that the whole loss was covered by its own policy, and that the company was liable therefor. It was therefore bound to pay the whole, and the court held that, having actually paid, it could not avoid the effect of payment merely by calling it a loan. But the Federal Company made no such admission in the present case. On the contrary, it denied liability except for $^{40}/_{75}$ of the loss, although it was willing to advance the remainder to the insured upon a contract that the money was to be repaid if and when the insured should recover against the subsequent underwriters. I do not see

why such an agreement should be construed to mean what the parties never intended. It was not, and was not meant to be, a payment. The Federal Company and the subsequent underwriters were the real parties to the dispute. Evidently one or the other must make good the unpaid part of the libelant's loss, but they could not agree upon whom the liability must fall. In that situation the Federal Company said in effect to the libelant: "Pending the settlement of this dispute, we are willing to lend you the money in controversy if you will agree to pay it back in case the court gives you a decree against the subsequent insurers. If you fail in the suit, your failure will mean that we were wrong in our view of the law, and ought to have paid you in full at the first. In that event the money in effect will be adjudged to be yours, and it need not then be repaid." Such a transaction seems to me fair and unobjectionable. The insured gets the immediate use of the money which he must ultimately recover from one or the other disputant, and the quarrel is fought out between the real parties in interest. The subsequent insurers lose no right, for, if they are liable at all, they are liable because they made binding contracts directly with the libelant, and it can make no difference to them what becomes of the money which their contracts oblige them to pay.

Decrees may be entered in the respective suits, with interest and costs.

### Upon Rehearing.

This rehearing was granted in order that Leary v. Murray (3d Circuit) 178 Fed. 209, 101 C. C. A. 529, might be considered—a case that was not cited upon the first argument. I have examined carefully the opinion of the Court of Appeals, but I do not understand it to decide the pending questions, as perhaps the following statement of the rather complicated facts may show: The launch White Seal was insured in three companies on different dates—in the Home Company on July 20, 1903, for $1,500; in the China Company on June 11, 1904, for $3,000; and on June 16, 1904, in the United States Lloyds for $1,500. In each policy the vessel was valued at $6,000, so that the value was exactly covered, and there was no double insurance. The vessel was injured by stranding, and the loss, $4,050, was apportioned among the underwriters without dispute. But a claim for salvage was still in litigation, and a guaranty company had become surety on the bond given by the owners to release the vessel. To secure the company, the owners assigned the policies as collateral, and, after the salvor had recovered a decree amounting with costs to about $1,200 and the company had paid the money, the underwriters were called upon to reimburse the company. It appeared, however, that by an arrangement between the underwriters and the company the policies had been replaced by bonds of $300, $600, and $300, respectively, conditioned to protect the company against the salvage claim. The Home Company and the Lloyds paid what they owed, but the China Company had meanwhile become insolvent and its bond was apparently uncollectible. Thereupon the guaranty company—to whose use the salvage decree had been marked—issued execution thereon and attached the launch, in order to recover so much of the decree as

remained unpaid. The execution was resisted by the owners on the ground inter alia that by taking the bonds in place of the policies the company had diminished and limited the underwriters' liability to the prejudice of the owners; or, to state the contention in figures, the owners insisted that because the Home policy was first in date it was chargeable with the full sum of $1,500, and, as only $1,006.25 had been paid, $493.75 was still due thereon. But, as the guaranty company had given up this liability for a bond of $300 only, the owners claimed to be injured by the substitution. This contention was based upon the American clause, which was in all the policies, but the court held that it did not apply because there was no double insurance, and that the underwriters were liable in the proportions of one-quarter and one-half, respectively. It was also held (for other reasons not now important) that the guaranty company had not in fact diminished its security by taking the bonds, so that both questions were decided against the owners.

I can discover nothing in the court's discussion of the subject that affects the present controversy. On the contrary, it seems clear to me that no such question could have been in mind. The policies then under consideration were all valued policies, and their aggregate was exactly equal to the value of the vessel, so that no open policy was involved and there was no double insurance. The questions now in dispute could not have been decided, for they were not presented, and I see no indication that the Court of Appeals considered them, or intended to refer to them at all.

I find no reason for modifying the opinion filed on January 4th.