## COLONIAL FINANCE CORPORATION *vs.* SCHACHT MOTOR TRUCK COMPANY OF N. E., INC.

JUNE 6, 1932.

PRESENT: Stearns, C.J., Rathbun, Sweeney, Murdock, and Hahn, JJ.

RATHBUN, J. This is an action against the indorser of twelve promissory notes. A jury trial resulted in a verdict for the defendant and the case is here on plaintiff's exceptions taken to rulings made in the course of the trial, including a ruling refusing to direct a verdict for the plaintiff.

The plaintiff, which is engaged in the business of discounting commercial paper, discounted the notes for the defendant which received them from their respective makers in partial payment for motor trucks sold by defendant to said makers on conditional sale agreements. An item covering the cost of insurance was included in the amount of each note. In each instance, before a truck was delivered, the conditional sale agreement was assigned by defendant to the plaintiff, and the note was indorsed by defendant by unqualified indorsement to the plaintiff, who discounted the note for the defendant and obtained from the Royal Insurance Company a policy of insurance covering the interests of both the plaintiff and the purchaser. No insurance was obtained to protect the defendant from loss by reason of liability on the indorsement. Before the notes were paid the trucks were damaged or destroyed by fire in a garage in which they were stored. Individual suits on their respective policies were commenced by the plaintiff and by each of the purchasers, and the plaintiff commenced this suit to recover from the defendant on its contract of indorsement. It is apparent that the plaintiff was pressing the insurance company for settlement of plaintiff's loss. The insurance company did not acknowledge liability to the plaintiff and was anxious to contest the question of liability, particularly as to the purchasers. The reason assigned by the insurance company for not paying the loss was "that they weren't satisfied with the circumstances sur-

rounding the fire." By reason of "business pressure" the insurance company deemed it advisable to satisfy the plaintiff, provided the insurance company became subrogated to the rights of the plaintiff against the defendant on the indorsements. Each of the conditional sale agreements provided that "(11) The proceeds of any insurance, whether paid by reason of loss of or injury to the Motor Vehicle, returned premium or otherwise, shall be applied towards the replacement of the Motor Vehicle, or payment of any obligation hereunder at the option of the seller."

If the insurance company admitted liability and settled with the plaintiff, said company would, in its attempt to enforce its claim for subrogation against the defendant, be met with the contention that the notes had been paid and, consequently, the liability of the indorser extinguished. The plaintiff being in need of money, the insurance company decided to adopt a plan—by no means novel in such circumstances—for putting the plaintiff in funds by making a loan to it of $27,000, which sum was approximately the amount of the plaintiff's loss. The directors of the plaintiff company having voted to accept such a loan, the insurance company advanced said amount to the plaintiff and received in return not only the plaintiff's negotiable promissory note for $27,000, payable one month after date, but also a receipt for the money as follows:

"April 24, 1929

RECEIVED OF ROYAL INSURANCE COMPANY, LIMITED, OF LIVERPOOL, ENGLAND, the sum of Twenty-Seven Thousand Dollars ($27,000.00), for which a promissory note, bearing even date herewith, has been given said Royal Insurance Company, Limited, of Liverpool, England, by the undersigned,—said sum being received as a loan, and not as a payment of any claim which the undersigned may have against said Royal Insurance Company, Limited.

COLONIAL FINANCE CORPORATION

Witness:                                by George E. Hanna

    Roger T. Clapp                           Ass't. Treas."

This note was replaced by an agreement, dated August 15, 1929, in which it was provided that the insurance company would loan to the plaintiff $27,000, and in which it was expressly stipulated that the money was not received in payment of any claim against the insurance company; that the loan would be payable out of any recovery obtained by the plaintiff in the case at bar; and that the plaintiff would do or suffer to be done nothing whereby the rights of the insurance company would be impaired. As security for such payment the plaintiff assigned its cause of action against defendant to the insurance company and indorsed to it the notes which are the basis of this action.

The sole defense to this action is based on the defendant's contention that this transfer of $27,000, made in accordance with said agreement, was not a loan but constituted a payment of the plaintiff's loss, and resulted in a payment of the twelve notes in question and the extinguishment of defendant's liability as indorser thereon.

In attempting to support the contention that the parties to said agreement intended by said transfer to settle a fire-loss and assume all the consequences resulting from such a settlement, the defendant introduced over the plaintiff's objection considerable testimony, most of which was in the nature of criticism of plaintiff's conduct in failing to continue to coöperate with the makers of said notes—the persons who purchased the trucks—in prosecuting their respective suits against the insurance company. The defendant further showed that until said transfer was made the plaintiff was pressing said company for a settlement of plaintiff's loss and not for a loan; and that after said transfer the plaintiff lost all interest in its suit against the insurance company. It was not contended that said agreement was not complete, clear and unambiguous. There was no evidence of any supplemental secret agreement between the parties to the agreement in question.

The plaintiff contends that, as said agreement was in writing and was complete, clear and unambiguous, extrinsic

evidence was inadmissible to determine the intention of the parties and that, although the defendant was not a party to the agreement, the rule should have been enforced because the defendant was seeking to obtain rights under said agreement. The plaintiff took numerous exceptions to the admission of such evidence. It is unnecessary to consider these exceptions. No evidence was introduced which had any tendency to show that the understanding of the parties was in any degree different than that expressed in their written agreement. In fact it seems idle even to suggest that the insurance company intended to admit liability and pay a loss. Said company for the very purpose of protecting its interest took every precaution to stipulate that such was not the intention. Such intention would have frustrated the entire plan.

The important question is whether the legal effect of the agreement and transaction between the insurance company and plaintiff was to pay the notes in spite of the intention of the parties to the contrary. Did the plaintiff by its agreement and transaction with the insurance company violate any duty which the plaintiff owed to the makers and to the indorser of the notes? Perhaps it would have been generous and charitable had the plaintiff cast in its lot with those of the makers and the indorser of the notes and waited until the termination of one or more suits at law, but we know of no legal principle requiring such generosity. One of the considerations to the plaintiff for parting with its money in discounting the notes was the defendant's indorsements. These indorsements were an asset of the plaintiff which had full liberty to sell or pledge the notes, enhanced in value by the indorser's liability, to any person willing to purchase.

Loan agreements similar to the one before us have been held valid in several well-reasoned decisions: *Luckenbach* v. *McCahan Sugar Refining Co.*, 248 U. S. 139; *Bradley* v. *Lehigh Valley R. Co.*, 153 Fed. 350; *Peninsular & O. S. S. Co.* v. *Atlantic Mut. Ins. Co.*, 185 Fed. 172; *The Turret*

*Crown,* 282 Fed. 354, 297 Fed. 766. See also *Cadillac Auto Co.* v. *Fisher,* 158 Atl. (R. I.) 717. The defendant relies upon *Roos* v. *Philadelphia W. & B. R. Co.,* 49 Atl. 344. The reasoning in the opinion appears to ignore entirely the insurer's right to subrogation.

The plaintiff's exception to the refusal to direct a verdict for the plaintiff is sustained. The defendant may, if it shall see fit, appear on June 14, 1932, at 9 o'clock a. m., Eastern standard time, and show cause, if any it has, why the case should not be remitted to the Superior Court with direction to enter judgment for the plaintiff for $31,837.85.

*Edwards & Angell, William H. Edwards II, Edward Winsor, Edward T. Richards,* for plaintiff.

*Hogan & Hogan, Edward T. Hogan, Laurence J. Hogan,* for defendant.