## FAIRMONT COAL CO. v. JONES & ADAMS CO.

(Circuit Court of Appeals, Seventh Circuit.   January 3, 1905.)

No. 1,107.

1. BAILMENT—DUTY AND LIABILITY OF BAILEE—CONSTRUCTION OF CONTRACT.
    The common-law duty of a bailee for hire with respect to the thing bailed is to exercise a reasonable degree of care and skill for its preservation, and unless he has undertaken, by the terms of his contract, express or implied, to become an insurer, he is not liable for the destruction of the thing bailed from an unforeseen cause which he could not control; and stipulations in his contract which merely declare a liability which the law would impose upon the facts neither increase nor change his obligation.

    [Ed. Note.—For cases in point, see vol. 6, Cent. Dig. Bailment, § 46.]

2. SAME—AGREEMENT TO BE "RESPONSIBLE" FOR THING BAILED.
    Plaintiff and defendant entered into a contract by which defendant, the lessee of a coal dock, was to act as bailee and agent in receiving, storing, re-shipping, and selling coal produced by plaintiff. The contract provided that plaintiff should remain the owner of the coal until it was sold, and fix the selling price, defendant to receive a commission on the sales and to guaranty the accounts; that plaintiff should insure all coal consigned, "and deliver the same safely alongside" defendant's dock, which should "thereupon be responsible to said first party for all coal after such delivery alongside its dock," and insure the same, and pay taxes thereon, and guaranty weights as per bills of lading, being compensated therefor and for dock rents by the payment by plaintiff of a stated price per ton for loading and reloading. *Held* that, in view of the other provisions of the contract, the provision that defendant should be responsible for the coal after its delivery was not intended to enlarge its common-law liability as bailee by making it an insurer against all possible contingencies, but to mark the time when such liability should commence, and that it was not liable for a loss of coal through a collapse of its dock occurring without any fault or negligence on its part.

In Error to the Circuit Court of the United States for the Northern District of Illinois.

The plaintiff in error sued in assumpsit to recover the value of certain coal consigned to the defendant, and lost while in the defendant's possession; also to recover the balance due upon open account, and for the proceeds of the sale of certain other coal consigned and not accounted for.

The plaintiff in error, a corporation of the state of West Virginia, shipped coal, upon consignment, to the defendant in error at Ashland, Wis. The latter had leased a dock extending over and into the waters of Ashland Bay, and controlled and managed it. The contract between the parties, dated April 24, 1902, recites that the plaintiff is engaged in the production of bituminous coal in the state of West Virginia, and that the defendant is engaged in the operation of coal docks at Duluth, Minn., and Ashland, Wis., and in marketing coal therefrom; that the plaintiff is desirous of reaching territory tributary to the docks of the defendant, and thereupon appoints the defendant its agent in the storing, handling, and selling of its coal in Duluth and Ashland, upon the following conditions: (1) Plaintiff

agreed to furnish, and the defendant to receive, 25,000 tons of Fairmont coal between May and September, 1902, and thereafter, during the remainder of the season of navigation, such additional quantity as may be agreed upon. (2) The coal furnished should be upon consignment, and remain the property of the plaintiff until sold and delivered to buyers, no property interest being acquired by the defendant in any of the coal so furnished; the defendant to guaranty all collections, and the selling price to be fixed by the plaintiff. (3) No other bituminous coal to be handled by the defendant, except upon written consent of the plaintiff. (4) The defendant to advance freights from Lake Erie ports to its docks, and to deduct the amount advanced upon settlements. (5) The plaintiff to insure all coal consigned "and deliver the same safely alongside" the defendant's dock, who "shall thereupon be responsible to said first party for all coal after such delivery alongside its dock," and insure the same, and pay taxes thereon, and guaranty weights as per bills of lading. (6) The defendant to enter into no contract for sale for future delivery, except as should be designated by the plaintiff. (7) The instructions of the plaintiff as to prices, terms, and conditions of sale to be absolutely carried out, so that within the common territory the selling prices fixed by the plaintiff should be, under substantially similar circumstances, uniform and without favor or discrimination. (8) The plaintiff to pay the defendant 15 cents per ton for unloading from vessels, and 17 cents per ton for reloading coal, if not screened, and 25 cents per ton for screening and reloading coal. These charges to include dock rents, taxes, insurance, and the guaranty of weights. (9) The prices stated to cover coal screened at the dock. (10) Plaintiff to pay the defendant a commission of 5 per cent. for selling screenings, and 4 per cent. for other grades; the percentage to be based on the selling price of coal at the dock, as sanctioned by the plaintiff. (11) Plaintiff not to compete with the defendant in making sales of Fairmont coal in the territory specified, with the privilege reserved to the defendant to sell cargo coal under conditions stated. (12) The commission provided to cover the total cost to the plaintiff for marketing direct to dealers or consumers; the defendant not to sacrifice any part of its commissions, or directly or indirectly to make other concessions to influence trade, or sell through others than those employed exclusively as the direct representatives of the defendant at fixed salaries. (13) Settlements to be made on the 25th of each month, covering the transactions of the preceding month. (14) The defendant to keep accurate record and books of account, and to report as the plaintiff may from time to time require, with the right reserved to plaintiff to examine and audit the books of account of the defendant. (15) At the expiration of the contract, coal consigned and remaining upon the docks of the defendant shall be purchased by the defendant at the then market value.

On September 28, 1902, part of the coal dock at Ashland leased by the defendant suddenly collapsed, and there sank with it into about 20 feet of water some 6,300 tons of coal so consigned. A considerable portion of this coal was recovered at an expense incurred by the defendant of $2,689.78, but 1,671.35 tons were totally lost. The fact is stipulated that the collapse of the dock and the loss of the coal occurred without fault or negligence upon the part of the defendant. The court below ruled that the plaintiff should not recover the value of the coal lost, and also charged against the amount due from the defendant the expense incurred in saving the portion of the coal recovered. To review these rulings, this writ of error is sued out.

W. H. McSurely, for plaintiff in error.

F. B. Johnstone, for defendant in error.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

JENKINS, Circuit Judge, after stating the facts, delivered the opinion of the court.

The relation created by the contract in question, as between the parties thereto, was that of principal and agent, principal and factor, bailor

:and bailee.  The common-law duty of the bailee with respect to the thing bailed is to exercise a reasonable degree of care and skill for its preservation.  He is not liable for loss or injury to the thing bailed, occurring either by vis major, or from unforeseen and unexpected causes not naturally to be expected, and which could not be guarded against by reasonable foresight.  He is not an insurer. It is, of course, competent for the bailee to enlarge his common-law liability, and where he has expressly undertaken, by contract express or implied, to assume the character of insurer, he is liable for the destruction of the thing bailed, although occurring from an unforeseen cause which he could not control.   Sturm v. Boker, 150 U. S. 312, 14 Sup. Ct. 99, 37 L. Ed. 1093.  The bailee here is therefore liable, if liable at all, because of the stipulations of the contract.   In the construction of that contract it is to be remembered that, if its terms merely declare the liability which the law upon the facts would impose, the obligation of the bailee is neither increased nor changed, for, as Story observes, the general rule in the construction of special contracts of this kind is not to expound the contract unfavorably to .the bailee beyond the obvious scope of its terms.   Story, Bailm. § 35.   Thus Blackstone states that a bailee "who undertakes specially to keep the goods safely and securely" obligates himself to the ordinary diligence which the common law demands (2 Bl. Comm. 452); otherwise, however, if the term of the contract is to do that absolutely which the law does not require to be done.   Of this class are many of the cases cited by the plaintiff in error.   Direct Navigation Company v. Davidson (Tex. Civ. App.) 74 S. W. 790; Harmony v. Bingham, 12 N. Y. 99, 62 Am. Dec. 142; Coal Company v. Richter, 31 W. Va. 858, 8 S. E. 609; Reinstein v. Watts, 84 Me. 139, 24 Atl. 719; Tindall v. McCarthy, 44 S. C. 487, 22 S. E. 734.   These cases are wanting in the element of agency, and merely emphasize the rule, so that the question resolves itself to this:  Did the defendant in error by the stipulation of the contract become an insurer of this coal against all possible contingencies?  In what respect, if at all, was its common-law liability enlarged?  The solution of these questions rests upon the proper construction of the fifth paragraph of the contract, read in the light of the situation disclosed by .the other clauses of the contract.   That paragraph is as follows:

"Fifth. The first party shall insure all cargoes of coal consigned to the second party, and deliver the same safely alongside second party's docks, and said second party shall thereupon be responsible to said first party for all coal, after such delivery alongside its docks, and shall insure all such coal upon receipt of the same at its own expense, and shall also pay any taxes that may be thereafter levied upon the same; and also guarantee to the first party weights as per bills of lading, but said bills of lading shall be accompanied by manifests showing initial, number and contents of each car, evidencing the coal covered by such bills of lading. These charges shall be considered as part of the cost of storing and handling."

The agreement made the defendant in error the selling agent of the plaintiff in error at Ashland and Duluth.  The coal was to remain the property of the bailor until sold and delivered by the bailee, and until the proceeds were accounted for.  Then, and then

only, would the bailee have any right in the accounts arising from the sale, or any right of action against the purchaser. The bailee guarantied the collection of the accounts. The coal could only be sold at such prices as the bailor should from time to time direct. The bailee should not handle bituminous coal on its own account, or any consigned by others. It should advance the necessary freights from Lake Erie ports, deducting the amount from sales made. The bailor allowed the bailee 15 cents per net ton for loading coal from the vessel, and 17 cents per net ton for reloading unscreened, and 25 cents per net ton for screening and reloading coal. Such allowance was to be considered an equivalent for all dock rents, taxes, insurance, and guaranty of weights by the bailee. The bailee was to receive a commission of 5 per cent. for selling screenings, and 4 per cent. for other grades of coal, based upon the selling price, as authorized from time to time by the bailor; and the bailee was debarred from making any concessions of its commission, or of the storage or handling charges, to secure trade, whereby all cutting of prices was prevented. It is difficult to conceive of a contract which could be drawn more certainly to deprive the bailee of all discretion, or to continue the bailor in uncontrolled authority over the thing bailed. In the conditions established by the contract there is nothing to lead us to suppose that the bailee designed to enlarge its common-law liability, except as may be spelled out by the precise language of this fifth paragraph. By that the bailor insured the consignments of coal while in transit from its mines to the lake ports for shipment, and on the voyage through the lakes to the port of delivery, and undertook to deliver the cargoes safely alongside the dock at Duluth and the dock at Ashland; and thereupon, says the contract, the bailee shall "be responsible to said first party for all coal after such delivery alongside its docks." So that, in the last analysis, the question turns upon the proper meaning to be given to the word "responsible," as employed in the contract. Does it mean liable as insurer, or does it mean that the responsibility of the bailee shall begin when the vessel containing the coal is safely alongside the dock? We think that the latter, in view of the conditions of the contract, is the natural and correct meaning to be given to the term. The bailor was to insure its coal up to that time. After that time, in consideration of the commission allowed, the bailee was to insure. The term "responsible" is employed in connection with the subject of insurance. The time of delivery to the bailee—the time when the obligation to insure commenced—was the time of the arrival of the vessel safely alongside the dock. That marked the time when the duty of the bailor ended and the duty of the bailee began. If the bailee assumed the character of an insurer, and became absolutely responsible to the bailor for the return of the coal or its proceeds, why should the contract provide that the former should insure the coal? This clause means to us that the bailor recognized the contingencies of loss attaching to its continued ownership of the coal; that it must bear the loss occurring through fire, and sought to protect itself in that respect, but at the expense of the bailee. The same observa-

tion would apply with reference to the provision for the payment of taxes. The intent of the parties, as we read this contract, was that the liability of each is to be measured by the law of the land, except as to those matters expressly mentioned, with respect to which that liability was enlarged. This reading is strengthened by a provision of the first clause which, although connected with, and possibly limited to, the subject of the delivery and receipt of coal, may well be held to characterize the general intent as to the duty of each, in the absence, at least, of any express provision enlarging the common-law liability. That clause is as follows:

"Both parties in entering into this agreement realize the uncertainty of absolute deliveries growing out of strikes, casualties or other causes beyond the control of either party, and it is hereby mutually acknowledged that the intent of this agreement is not to bind either party as to failure to perform or modified performance by reason of matters beyond the control of the party in default, but that the coal shall be shipped and accepted by the second party as per delivery specified so far as the labor and the physical conditions at the respective plants and the ability of the carriers will permit."

The loss concededly occurred by unforeseen accident, and without default or negligence on the part of the bailee. Its liability as insurer is not established by any express term of the contract. We do not think that it can be fairly implied. Nor is there anything in the surrounding conditions which would warrant a construction to work out liability as insurer.

The judgment is affirmed.