**H. WARSHOW & SONS, Inc., v. STANDARD MARINE INS. CO., LIMITED, OF LIVERPOOL, ENGLAND, et al.**

District Court, S. D. New York.

June 13, 1939.

John S. Stover, of New York City, for plaintiff.

Bigham, Englar, Jones & Houston, of New York City (Martin Detels, of New York City, of counsel), for defendant Standard Marine Ins. Co., Ltd.

BYERS, District Judge.

This is a motion to set aside a directed verdict for the defendant, and for judgment for the plaintiff.

The question for decision is, which of two insurance companies is to bear a loss where each policy contains a provision concerning "other insurance".

In form, the action is by the owner of certain rayon lastex cloth delivered to Clyde Piece Dye Works, Inc., of Paterson, New Jersey, to be dyed and finished, but as to which neither dyeing nor finishing was done. The goods suffered water damage at some undetermined time and under some undisclosed circumstances between December, 1934, and December, 1935.

In substance, it is an action for the benefit of the insurance company whose policy insured the plaintiff's goods while in the finishing plant, against the company insuring the Dye Works as to its own goods, wares and merchandise, and "the property of others for which the Assured are (is) liable, and all other property in which they (it) may have any form of insurable interest, or for which they (it) may assume liability".

The plaintiff sues under the familiar "borrowed and loaned receipt", discussed in Luckenbach v. W. J. McCahan Sugar Refining Co., 248 U.S. 139, 39 S.Ct. 53, 63 L. Ed. 170, 1 A.L.R. 1522. In other words, the plaintiff's insurance company advanced the amount of the agreed loss according to the terms of a "borrowed and loaned receipt" which is in evidence.

The Dye Works is named as a co-defendant, but service of process was not made upon it; nor has there been any notice of appearance on its behalf.

The record preserves a studied reticence as to the circumstances attending the damage and the legal status of the Dye Works at the time when the damage was suffered.

The plaintiff's president testified that the unfinished merchandise in question, having been sent from its mill in the South to the Dye Works in December of 1934, was held there as greige goods, pending instructions as to dyeing and finishing. Apparently as to the lots in question, either no instructions were issued, or at least none had been complied with by December of 1935, when the plaintiff reclaimed the goods from a receiver of the Dye Works, having to file a bond for that purpose.

There is no proof touching the proceedings leading to the appointment of the receiver, nor as to their date or precise nature; this is thought to be important because some of the goods showed water damage when delivered to the plaintiff, but whether that happened during the receivership has not been shown.

Also there was a matter of 83¾ yards of greige goods missing entirely. Again there was no attempt to show whether the goods disappeared while the Dye Works was still functioning, or after the receiver took possession of the company and its property, and the fact of the delivery of these 83¾ yards to the Dye Works at all could only be inferred from the most general kind of testimony from the plaintiff's president.

Before considering the provisions of the policies, it will be convenient to isolate the bailor and the bailee from their respective underwriters, in order to consider the essential rights and responsibilities which gave rise to the issuance of these two insurance policies.

The plaintiff, as owner of the goods, had the right to require of the finisher that it would assume responsibility for the safe preservation of the greige goods while in its custody; failure to perform that obligation, if due to neglect upon the part of the latter, would have rendered the finisher liable to pay damages to the owner.

Does it follow, under the evidence, that the owner may have recourse to the bailee's underwriter?

If it is to be assumed that the plaintiff has demonstrated such neglect on the part of the finisher as would entitle the former to recover directly from the latter if no insurance policy had been issued—which is a large assumption under this record—it becomes necessary to give attention to the precise terms of the respective agreements of indemnity.

The defendant's policy issued to the bailee contains the following:

"(e) Other Insurance. It is expressly agreed that this insurance shall not cover to the extent of any other insurance whether prior or subsequent hereto in date, and by whomsoever effected, directly or indirectly, covering the same property, and this

Company shall be liable for loss or damage only for the excess value beyond the amount of such other insurance."

"(i) Benefit of Insurance. Warranted by the Assured that this insurance shall not enure directly or indirectly to the benefit of any carrier, bailee or other party, by stipulation in bill of lading or otherwise, and any breach of this warranty shall render this policy of insurance null and void."

"5. This policy covers property of the Assured and the property of others for which the Assured are liable, and all other property in which they may have any form of insurable interest, or for which they may assume liability. Shipments are considered at Assured's risks regardless of the terms of contract of shipment, contract for dyeing, finishing, or other processing, or contract of purchase or sale."

"12. This policy also covers goods, * * *, the property of others, while anywhere on the premises (of the converter) * * *, it being agreed, however, that this insurance does not cover the risks of conversion by the assured, nor does it cover mysterious disappearances, or errors resulting from processing on the assured's premises referred to above. * * *"

The policy was dated March 21, 1935, which is later by about three months than the date of delivery of the merchandise by the plaintiff to the Dye Works.

The policy insures "Clyde Piece Dye Works, Inc., 140/144 Summer Street, Paterson, N. J. Loss, if any, payable to Assured or order. On shipments made on and after the 27th day of April 1935, at noon * * * until the 27th day of April 1936, at noon".

The plaintiff's president testified that, in making his arrangements for the dyeing and finishing of his goods, he asked an official of the Dye Works if the latter carried insurance on customers' goods, and was shown some policies in support of an affirmative answer to that question, and he assumed that this defendant's policy was one of those exhibited.

Having in mind the date of delivery as of December, 1934, it is evident that the policy from which the above quotations have been taken could not have been so exhibited, for it was not then in existence.

It does not appear that the clause above quoted covering other insurance was the subject of discussion, and of course it probably was not thought of by either of the parties.

It will be seen that the defendant company expressly contracted against the payment of any loss which was covered by other insurance issued before or after the date of its policy by whomsoever effected, and undertook liability for loss or damage only for the excess value beyond the amount of such other insurance.

■ Why that provision should be read out of the case has not been demonstrated. If the bailee could not have avoided the terms of its express contract with its own insurer, it is difficult to perceive why the bailor should have any greater measure of recovery open to it under the same instrument.

Turning now to the plaintiff's policy, it appears that the Potomac Insurance Company insured the plaintiff "for account of themselves, or for parties for whom they are Agents (loss, if any, payable to the Assured or order) on shipments made on and after the 16th day of April 1935, at noon, until the 16th day of April 1936, at noon".

The coverage is (Par. 11. (a)) of "the property insured hereunder, while in custody of dyers, finishers, * * * and similar custodians, while in transit, against all loss or damage from an external cause, including the risks of theft and/or pilferage and/or non-delivery * * *. This policy also covers while on the premises of dyers, finishers, * * * and similar custodians, against the risks of * * *, sprinkler leakage and/or water damage and/or fraud and/or conversion and/or theft (whether forcible or otherwise) * * but this company shall not be liable for more than Ten Thousand ($10,000) Dollars in any one casualty on merchandise in the custody of any one dyer, finisher, * * * and similar custodian."

This loss is agreed to be for less than $5,000.

"(b) The assured warrants that they have not made and will not make any agreement with any dyers, finishers, * * * or similar custodians releasing them from their liability on merchandise in their custody and in the event of a loss, this Company shall not be liable under this policy unless the dyer, finisher * * * or similar custodian denies liability or claims inability to pay, in which event the assured's claim against the dyer, finisher, * * *

or similar custodian shall be subrogated to this Company upon payment of loss under this policy.

"(c) It is understood and agreed that non-payment of the dyer, finisher * * * or similar custodian or non-payment under insurance policies provided by dyers, finishers * * * or similar custodians within sixty (60) days after the occurrence of any loss covered by this endorsement shall constitute a claim hereunder."

The provision touching other insurance is as follows:

"6 (r) Carriers Clause. This insurance warranted to be in all cases null and void to the extent of any insurance by any carrier or bailee which would attach and cover said property if this Policy had not been issued, * * * and it is also understood and agreed, that in case any agreement be made or accepted by the Assured with any carrier or bailee by which it is stipulated that such * * * bailee shall have, in case of any loss for which he may be liable, the benefit of this insurance, or exemption in any manner from responsibility grounded on the fact of this insurance, then and in that event this Company shall be discharged of any liability for such loss hereunder, but this Policy in these and all cases of loss or damage by perils insured against shall be liable under and owe actual payment for (only) what cannot be collected from carrier and/or bailees and/or other insurers of property lost or damaged * * * and the advancing for this purpose only of funds to the Assured for his protection pending such delay shall in no case be considered as affecting the question of the final liability of this Company * * *." (Then follow provisions appropriate to the "borrowed and loaned" arrangement hereinbefore stated.)

Under the circumstances recited, it will be seen that the argument for the plaintiff has two objectives:

(a) To impose the burden of loss upon the bailee's insurer.

(b) To lay a possible foundation for controversy between the plaintiff and its own insurer.

As to the latter, what is here said is not intended to apply to such issues, if any there are.

■ The present effort is to decide this controversy only, and the plaintiff's policy has been examined for the purpose of determining whether it may have recourse as bailor to the policy issued by the defendant. In that connection, no authority has been cited to justify the conclusion that the terms of the defendant's indemnity should be extended or disregarded.

The provision whereby a claim against it may be asserted only for the excess of loss covered by another policy, is deemed to protect it from the plaintiff's claim in this suit.

Nor is it considered that the plaintiff has established by proof, that the bailee's policy would "attach and cover said property" if plaintiff's policy had not been issued.

It must be evident that, if the clauses respecting other insurance, contained in both policies, are to be given effect, these goods of the plaintiffs were not within the coverage of any insurance policy, which is an entirely avoidable conclusion.

Both policies require examination to determine whether the evidence will support exoneration of either company by reason of the existence of the policy issued by the other. As to the defendant company, it has clearly contracted to pay only the excess of damage not covered by other insurance, and no such excess is here disclosed.

As to the plaintiff's insurer, it has agreed that non-payment by the bailee sixty days after the occurrence of loss constitutes "a claim hereunder"; why it should be excused from that undertaking has not been demonstrated. Loss and/or damage to the plaintiff's property while in custody of a dyer and finisher is one of the essential purposes of the plaintiff's policy for which the premium was paid, and no reason appears why the plaintiff's insurer should be excused from recompense for that loss and damage. If there is any ambiguity between the provisions quoted from printed clause (r) of paragraph 6 and the typewritten clause (c) of paragraph 11—and perhaps there is—it must be resolved so as to require adherence to the obligations of the latter.

■ In concluding that the plaintiff's motion to set aside the direction of a verdict for the defendant must be denied, it is appropriate again to refer to the fact that the essential circumstances constituting the bailee's breach of duty, which would necessarily kindle the obligation of the company indemnifying against loss arising therefrom, have not been brought to light.

·Motion denied. Settle order.