**MILL FACTORS CORPORATION v. MING TOY DYEING CO. et al. (FIDELITY & GUARANTY FIRE CORPORATION, Third Party Defendant).**

District Court, S. D. New York.

Oct. 14, 1941.

Greenhill & Greenhill, of New York City (Joseph Greenhill and Simon Greenhill, both of New York City, of counsel), for plaintiff and third party defendant.

Bigham, Englar, Jones & Houston, of New York City (John M. Aherne and Edward Paul Greene, both of New York City, of counsel), for defendants and third party plaintiff.

MOSCOWITZ, District Judge.

The plaintiff, Mill Factors Corporation is a factoring and money lending concern engaged in making loans to textile manufacturers upon the security of their merchandise. Among its customers was Buyer Silk Manufacturing Company. From time to time, Buyer Silk Manufacturing Company, with the permission of plaintiff, sent merchandise to the defendant, Ming Toy Dyeing Company, to be dyed. While certain merchandise was on the dyer's premises it was, through no negligence of the dyer, damaged by fire to the extent of $5,140.20.

Mill Factors carried insurance on the goods with Fidelity and Guaranty Fire Corporation, the third party defendant. Also in force at the time of the fire was insurance taken out by Ming Toy with the defendant Insurance Company of North America. North America had, moreover, issued a certificate of insurance to Mill Factors specifically insuring the goods while on Ming Toy's premises.

After the fire, Fidelity paid the plaintiff the amount of its loss under a "loan receipt" whereby Fidelity was to be repaid only out of any further recovery made by Mill Factors. This action, though nominally brought in the name of Mill Factors, is in substance an action by Fidelity to recover from the bailee's insurance company the amount which it, Fidelity, paid to the bailor. The controversy is, therefore, in reality one between two insurance companies to ascertain which should bear the loss.

Among the conditions contained in the policy issued by North America was one limiting the coverage of the policy to those instances where the bailee was in fact liable to the bailor. In this connection the agreement of bailment between Mill Factors and Ming Toy provided that the latter agreed to "assume full responsibility" to the former for the goods until returned to Mill Factors premises. North America urges that this language was not adequate to expand the obligation of Ming Toy beyond that of an ordinary bailee and that therefore, in view of Ming Toy's admitted non-negligence, no obligation ever arose on its policy. Its position in essence is that "responsibility" or even "full responsibility" is not equivalent to "liability".

In support of this construction of "responsibility" defendants cite Fairmont Coal Co. v. Jones & Adams Co., 7 Cir., 134 F. 711, where defendant was to be "responsible" for certain coal after delivery alongside the dock. The facts of that case, however, are so different from the case at bar as to make the decision of little value here. The Court there noted in holding the defendant merely to the liability of a common law bailee, that "responsible" was to be read in light of all the surrounding circumstances and that when so read there was no intention to expand the bailee's liability.

Here the obligation on the bailee to assume "full responsibility" for the goods until returned to plaintiff's premises leaves little doubt as to what was intended. If only common law liability was the intention of the parties, then there was no need for saying anything at all, no less expressing the obligation in terms of "full responsibility". It is interesting also to note that Bouvier's Law Dictionary defines "liability" in terms of "responsibility", and that in Automobile Ins. Co. of Hartford, Conn., v. Springfield Dyeing Co., Inc., 3 Cir., 109 F.2d 533, and H. Warshow & Sons v. Standard Marine Ins. Co., D.C.S.D. N.Y., 27 F.Supp. 974, the terms are almost used interchangeably. In ordinary business parlance "full responsibility" means more than mere liability for negligence and there is nothing to indicate that the par-

ties here intended to use it in any more limited sense. Compare Commercial Acetylene Supply Co. v. Fox, 47 Cal.App. 673, 191 P. 33, and Commercial Electrical Supply Co. v. Missouri Commission Co., 166 Mo.App. 332, 148 S.W. 995, where an obligation to be "responsible for any damage" was construed as expanding common law liability. It follows, therefore, that Ming Toy was liable for the loss and accordingly that its insurer is responsible unless it is to escape in some other way.

■ As a further defense, North America seeks to take refuge behind a clause in its policy limiting the coverage of the policy in cases where other insurance exists, to the amount by which such other insurance is insufficient to cover the risk. As a matter of fact, both policies concerned herein contained such clauses and if taken literally, neither would afford coverage. Such a result was clearly never intended, so that, as noted above, the issue confronting the Court is that of ascertaining which of two policies is to bear the loss. Various arguments have been made on each side in an effort to show why the particular phraseology of certain clauses requires the loss to be thrown upon the other company. If the language of the policy was clear, the Court would of course have no alternative but to decide accordingly. Where however, careful consideration of the two policies side by side affords no obvious reason on the face thereof for exempting one or the other from bearing the risk, it becomes necessary to review the nature of each of the policies in the light of the circumstances surrounding its issue.

■ Viewed in this light, it becomes obvious that the Fidelity policy was a general one to cover damage wherever the goods might be, whether in the plaintiff's custody or in the custody of dyers, finishers or other artisans. On the other hand, when the goods were shipped to Ming Toy full responsibility was placed on Ming Toy and to meet this responsibility North America wrote insurance specifically covering the goods at the Ming Toy location. North America, moreover, issued a certificate of insurance to the plaintiff evidencing such insurance and making the plaintiff the beneficiary thereof. In the recent case of Gordon v. Franklin Fire Insurance Co., First Dept., 262 App.Div. 328, 28 N.Y.S. 2d 480, the Court noted a distinction between a policy specific as to location and one which was a floater. While the "other

insurance" clause in that case was somewhat different from those presently concerned in that it referred to other "specific" insurance, the distinction drawn between specific and floater insurance is material to the present discussion. Faced with a choice between making a specific or a floater policy bear the loss, clearly the burden must fall upon the former.

In Automobile Insurance Company v. Springfield Dyeing Co., Inc., supra, the Court similarly regarded the bailee's policy as the "primary" policy. Considering the circumstances surrounding the issue of the North America policy, it too appears to be the primary policy.

Much support is placed by the defendants upon H. Warshow & Sons v. Standard Marine Ins. Co., supra. That case, however, as clearly indicated in the opinion, appears to have turned very largely upon the failure to prove liability of the bailee which was a condition precedent to bringing into play its insurer's obligation. Here where the bailee's liability exists, that decision cannot be controlling.

Judgment for the plaintiff against defendants and dismissing the defendants' complaint against the third party defendant.

Settle findings and decree on notice.