BOLTON v. ZIEGLER (two cases).
Civ. Nos. 438 and 439.

United States District Court
N. D. Iowa, Cedar Rapids Division.
March 31, 1953.

---

518

William M. Dallas and David H. Foster, of Donnelly, Lynch, Lynch & Dallas, all of Cedar Rapids, Iowa, for the plaintiffs.

Harry Wilmarth and Ralph W. Gearhart, of Elliott, Shuttleworth & Ingersoll, all of Cedar Rapids, Iowa, for the defendant.

GRAVEN, District Judge.

On October 6th, 1951, on United States Highway No. 30 in Cedar County, Iowa, in the country, a collision occurred between an automobile owned by E. W. Bolton and an automobile owned and operated by Pearl Ziegler and another collision occurred between the Bolton automobile and a semi-trailer truck owned by the Denver-Chicago Trucking Company. The collisions occurred in quick succession. The parties are in dispute as to which collision occurred first. The Bolton automobile at the time was being driven by Fannie Bolton, the wife of E. W. Bolton. The plaintiff, E. W. Bolton, was riding in the automobile as a passenger at the time. Immediately preceding the collisions the Bolton automobile and the Ziegler automobile were proceeding westerly on the highway with the Bolton automobile in advance of the Ziegler automobile and two semi-trailer trucks were proceeding easterly on the highway. The second of the trucks was owned by the Denver-Chicago Trucking Company and was being operated by its employee, Joseph DeMoura. E. W. Bolton and Fannie Bolton sustained serious personal injuries as a result of the collisions. E. W. Bolton and Fannie Bolton are citizens of the State of Iowa. Pearl Ziegler is a citizen of the. State of Illinois. In September, 1952, E. W. Bolton and Fannie Bolton brought the present actions against Pearl Ziegler in the District Court of Iowa in and for Cedar County. Service of original notice in the two cases was made upon Pearl Ziegler under the provisions of the Iowa Non-Resident Motorists Service Act. Sections 321.498 et seq., Code of Iowa 1950, I.C.A. The defendant, Pearl Ziegler, removed the two cases to this court on the ground of diversity of citizenship. In Case No. 438 the plaintiff, E. W. Bolton, asks damages in the amount of $35,000 and in Case No. 439 Fannie Bolton asks damages in the amount of $20,316.51 for the personal injuries sustained by them. The plaintiff in each case charges the defendant Ziegler with non-observance of the law of Iowa relating to the use of the highways.

The liability insurer of the Denver-Chicago Trucking Company was the Underwriters at Lloyds. On July 2d, 1952, E. W. Bolton executed the following document:

"Loan Receipt and Covenant not to Sue

"Whereas, E. W. Bolton, of Cedar County, Iowa, received injuries to his person as a result of a collision occur-

ring on or about the 6th day of October, 1951, on Highway 30 at a point about one mile East of Mechanicsville, Iowa, between a car owned by him and operated by his wife, a car owned and operated by Pearl Ziegler, and a truck owned by Denver Chicago Trucking Company and operated by its employee, Joseph DeMoura, and

"Whereas, the said E. W. Bolton asserted claims against the said Pearl Ziegler and Denver Chicago Trucking Company for the damages so sustained by him, and

"Whereas, the Denver Chicago Trucking Company and Joseph DeMoura have denied liability upon said claim and have asserted that said injuries and damages were due to the carelessness and negligence of the said Pearl Ziegler in the operation of her car so as to crash into the rear of the Bolton car and force it across the highway and into the path of the truck of the Denver Chicago Trucking Company, and

"Whereas, the Underwriters at Lloyds, insurer of the liability of the Denver Chicago Trucking Company, if any, for the damages sustained by the said E. W. Bolton as a result of said accident, has proposed to advance the sum hereinafter set forth to the said E. W. Bolton as a loan, re-payable only upon the conditions hereinafter set forth, in consideration of the covenants of the said E. W. Bolton not to sue the said Denver Chicago Trucking Company, any of its agents or employees, or Joseph DeMoura, or any other person, firm, or corporation legally liable for any alleged negligence of the said Joseph DeMoura upon any claim or claims or cause of action which he now has or could now or hereafter assert for damages sustained to his person as a result of the said collision occurring on or about the 6th day of October, 1951, and

"Whereas, the said Pearl Ziegler is insured by the Union Auto Indemnity Company, of Bloomington, Illinois, which company is liable for the damage

resulting from the negligence of the said Pearl Ziegler, and

"Whereas, the said E. W. Bolton sustained damage largely in excess of the sum to be advanced as aforesaid and it is contemplated that the recovery which will be made from Pearl Ziegler and those legally liable for her negligence will be greatly in excess of the amount so advanced, and

"Whereas, the said E. W. Bolton is desirous of obtaining the advance of said funds upon said terms and conditions,

"Now, therefore, in consideration of the sum of Nine Thousand & 00/100 Dollars ($9,000.00) this day received from Underwriters at Lloyds as a loan re-payable without interest only in the event and to the extent of any net recovery the said E. W. Bolton may obtain upon any claim or cause of action which he has for injuries and damages sustained to his person arising and growing out of said collision occurring on or about the 6th day of October, 1951, against Pearl Ziegler, or any other person, firm, or corporation except Denver Chicago Trucking Company, its agents or employees, Joseph DeMoura, or any person, firm, or corporation liable for the negligence of the said Joseph DeMoura or Denver Chicago Trucking Company.

"In consideration of the loan and advance of said sum the said E. W. Bolton hereby agrees:

"1. That he will not institute or maintain any action or proceedings of any kind or character against the Denver Chicago Trucking Company, any of its agents or employees, Joseph DeMoura, or any other person, firm, or corporation legally liable for any negligence of the said Denver Chicago Trucking Company or Joseph DeMoura for the recovery of any damages to his person sustained by him arising or growing out of the said collision occurring on or about the 6th day of October, 1951, between the car owned by him and operated by his wife, a car owned and operated by the said

Pearl Ziegler, and the truck owned by the said Denver Chicago Trucking Company and operated by Joseph De-Moura. In so agreeing not to sue the persons aforesaid the said E. W. Bolton does expressly reserve and retain each and every claim and cause of action which he may have or which he could assert against the said Pearl Ziegler or any other person, firm, or corporation except such as he has expressly herein covenanted not to sue.

"2. That from any recovery which he may obtain upon any claim for personal injuries against any person, firm, or corporation with respect to whom rights are reserved under the terms hereof for damages received by him as a result of, or arising and growing out of, the said collision occurring on or about the 6th day of October, 1951, the said E. W. Bolton will, after first deducting any and all expenses in any way connected with the making of said claim, or the bringing or prosecuting of any action thereon, re-pay to the said Underwriters at Lloyds the amount so advanced and loaned. It is understood and agreed that the obligation of the said E. W. Bolton to re-pay said sum of money is expressly limited to the net amounts of any sums recovered on said claim after first paying any and all expenses connected therewith and that under no circumstances or conditions is the said E. W. Bolton to have any obligation to re-pay any sum whatsoever except from the net funds received by him upon his claims as aforesaid.

"Dated this 2nd day of July, 1952.

"This is delivered on condition that check for $9,000.00 shall be delivered to me on or before July 10, 1952.

/s/ E. W. Bolton
_____

"Witness:

/s/ William M. Dallas"

On July 2d, 1952, Fannie Bolton executed a document which was substantially similar. E. W. Bolton received the sum of $9,000 and Fannie Bolton received the sum of $3,-000 as specified in the respective instruments.

The parties by pre-trial motions have presented and submitted to the Court the matters hereinafter referred to. In her answer in both cases the defendant, Pearl Ziegler, claims that she was not guilty of any negligence and that the collisions were occasioned solely by the negligence of the Denver-Chicago Trucking Company in failing to observe the law of Iowa relating to the use of the highways. It is indicated that the defendant, Pearl Ziegler, has brought on action against the Denver-Chicago Trucking Company in state court for damages claimed to have been sustained by her as a result of the mishap in question, which is still pending. It is the claim of the defendant Ziegler that if she was a tort-feasor then she and the Denver-Chicago Trucking Company were joint tort-feasors as to the plaintiffs and as to each other. It is also her claim that the Denver-Chicago Trucking Company and its liability insurer by means of the documents entitled "Loan Receipt and Covenant Not to Sue" are attempting to secure "contribution or indemnity" from her "contrary to the public policy and law of Iowa." She also makes a number of allegations, some of which are in the alternative. She alleges that the Denver-Chicago Trucking Company and its insurer are indispensable or necessary parties to these actions and moves that they be joined as parties or in the alternative that the actions be dismissed. She further alleges that the Denver-Chicago Trucking Company and its liability insurer are the real parties in interest and moves that they be made parties plaintiff, or in the alternative, that the actions be dismissed. She alleges that the citizenship of the Denver-Chicago Trucking Company and its liability insurer is diverse from that of the plaintiff and her own. She also alleges that the sums of $9,000 and $3,000 paid to the plaintiffs by the liability insurer of the Denver-Chicago Trucking Company were paid to them in full payment and satisfaction of their respective claims and that thereby she has been released from liability to the plaintiffs. She also claims that if

the said sums of $9,000 and $3,000 did not constitute payment and satisfaction of plaintiffs' claims such sums should be applied *pro tanto* to reduce the amount of any recoveries the plaintiffs may secure against her in these actions.

The plaintiffs contend that neither the Denver-Chicago Trucking Company nor its liability insurer are indispensable, necessary, or proper parties to these actions. The plaintiffs also contend that the amounts of $9,000 and $3,000 received by them did not constitute payment and satisfaction of their claims. The plaintiffs further contend that the defendant is not entitled to have the amount of their recoveries against her in these actions reduced *pro tanto* by those amounts.

 The matters presented have several phases involving a number of rules of law. Jurisdiction in these cases being based upon diversity of citizenship, the applicable law is that of Iowa. The claim of the defendant Ziegler that the Denver-Chicago Trucking Company and its liability insurer are wrongfully attempting to secure indemnity or contribution from her raises questions which have several aspects. It should first be noted that in that connection she refers to both indemnity and contribution. The distinction between claims for indemnity and claims for contribution has been recognized by the Iowa Supreme Court. See, American District Telegraph Co. v. Kittleson, 8 Cir., 1950, 179 F.2d 946, 951. The word "indemnity" as used in connection with the law relating to tort-feasors means a shifting of the entire loss, while the word "contribution" means a sharing of the loss. Under the Iowa law, where separate and independent acts of negligence by different participants combine to produce a single injury, both participants are jointly and severally liable to the injured person to the full amount of such person's damages even though the negligent act of one of the participants alone would not have caused such injury. MacDonald v. Robinson, 1929, 207 Iowa 1293, 224 N.W. 820, 62 A.L.R. 1419. See also, Latham v. Des Moines Electric Light Co., 1942, 232 Iowa 1038, 6 N.W.2d 853, 854. In suits arising out of a collision

there is frequently involved the feature of the negligence of two participants concurring to cause injury to a third person. Under the Iowa law such negligent participants are referred to as, and given the status of, joint tort-feasors. See, Way v. Waterloo, Cedar Falls & Northern R. R., 1947, 239 Iowa 244, 29 N.W.2d 867, 870, 174 A.L.R. 723, and MacDonald v. Robinson, supra at page 821 of 224 N.W. For a discussion of the use of the term "joint tort-feasors" to describe those whose negligence concurred to cause harm to another but who did not purposely act in concert, see, Prosser, Joint Torts and Several Liability, 25 California Law Review 413, 419 (1937) and Davis, Indemnity Between Negligent Tortfeasors: A Proposed Rationale, 37 Iowa Law Review 517, 537 (1952). In order for the question of either indemnity or contribution to arise as between two tort-feasors they must both be under liability to a third person because of a violation of a duty or duties owed by them to such third person. Lawrence v. Great Northern Ry. Co., D.C.Minn.1951, 98 F.Supp. 746, second opinion, not affecting this point, D.C.Minn.1952, 109 F.Supp. 552. Same case on appeal, Waylander-Peterson Co. v. Great Northern Ry. Co., 8 Cir., 1953, 201 F.2d 408.

 In the present cases, in order for any question of indemnity or contribution to arise as between the defendant Ziegler and the Denver-Chicago Trucking Company, they both must have violated a duty owing by them to the plaintiffs which made both of them liable to the plaintiffs for the full amount of their damages. The contentions of the defendant Ziegler, therefore, have to be based upon the assumption that such was the situation and that under the law of Iowa she and the defendant Denver-Chicago Trucking Company had the status of joint tort-feasors as to the plaintiffs and as to each other. The common law rule against contribution between joint tort-feasors is still followed in Iowa. American District Telegraph Co. v. Kittleson, supra, 179 F.2d at page 951. See, Hathaway v. Sioux City, Iowa, 1953, 57 N.W.2d 228, 233. Therefore, under the Iowa law the Denver-Chicago Trucking

Company would not be entitled to contribution from the defendant Ziegler. However, as heretofore noted, the defendant Ziegler also claims that the Denver-Chicago Trucking Company is wrongfully attempting to secure indemnity from her. The Iowa Supreme Court holds that in certain situations one tort-feasor may secure indemnity from another tort-feasor. Weidert v. Monahan Post Legionnaire Club, Iowa, 1952, 51 N.W.2d 400. See also, Rozmajzl v. Northland Greyhound Lines, 1951, 242 Iowa 1135, 49 N.W.2d 501, 506 and Hathaway v. Sioux City, Iowa, 1953, 57 N.W.2d 228. For other Iowa cases involving indemnity, see Davis, Indemnity Between Negligent Tortfeasors: A Proposed Rationale, supra. The Iowa Supreme Court has not specifically passed upon the question of indemnity between tort-feasors in a situation similar to that in the present cases. In the cases of Horrabin v. City of Des Moines, 1924, 198 Iowa 549, 199 N.W. 988, 989, 38 A.L.R. 554, and in Pfarr v. Standard Oil Co., 1914, 165 Iowa 657, 146 N.W. 851, 854, L.R.A.1915C, 336, the Iowa Supreme Court cites and quotes from the case of Union Stockyards of Omaha v. Chicago B. & Q. R. Co., 1905, 196 U.S. 217, 25 S.Ct. 226, 49 L.Ed. 453, 2 Ann.Cas. 525. The United States Court of Appeals for the Eighth Circuit in a case having to do with indemnity between tort-feasors under the Iowa law also cites and quotes from that case. American District Telegraph Co. v. Kittleson, supra. That case holds that no indemnity may be had where the one claiming indemnity and the one from whom indemnity is sought owed equal duties to an injured third party to whom both were liable. It is believed such holding is in accord with the Iowa law. In the present cases at the time of the collisions the defendant Ziegler owed the plaintiffs the duty of observing the laws of the State of Iowa governing the operation of motor vehicles upon highways, and the Denver-Chicago Trucking Company owed them the same duty. It would seem that in the present cases the defendant Ziegler and the Denver-Chicago Trucking Company were on an equality so far as duty to the plaintiffs is concerned. No cases have been cited or otherwise brought to the attention of the Court in which indemnity has been allowed in a situation similar to that in the present cases. In the cases of Dallas Ry. & Term. Co. v. Harmon, Tex.Civ.App., 1947, 200 S.W.2d 854; Valee v. Joiner, Tex.Com.App., 1932, 44 S.W.2d 983; and Northern Texas Traction Co. v. Caldwell, 1906, 44 Tex.Civ.App. 374, 99 S.W. 869, which involved violations of the law of the road, indemnity was denied. See also, Builders Supply Co. v. McCabe, 1951, 366 Pa. 322, 77 A.2d 368, 24 A.L.R.2d 319, 324. It seems clear, therefore, in light of the cases referred to, that under the Iowa law the Denver-Chicago Trucking Company would not be entitled to either indemnity or contribution from the defendant Ziegler. The liability insurer, the Underwriters at Lloyds, in that regard would seem to stand in no better position than does the Denver-Chicago Trucking Company. See, Maryland Casualty Co. v. Omaha Electric L. & P. Co., 8 Cir., 1907, 157 F. 514, 517 and Silver Fleet Motor Exp. v. Zody, D.C.E.D.Ky.1942, 43 F.Supp. 459, 460. See also, United States Casualty Co. v. Indemnity Ins. Co., 1935, 129 Ohio St. 391, 195 N.E. 850. It is the claim of the defendant Ziegler that a wrong would be done to her if the transactions in question were allowed to have the effect of permitting indemnity or contribution. In that connection she cites and relies upon the case of Trampe v. Wisconsin Telephone Co., 1934, 214 Wis. 210, 252 N.W. 675. In that case a secret agreement between an injured person and one of two alleged tort-feasors, which would have given such tort-feasor a greater amount by way of contribution than he would have been entitled to under the law of Wisconsin, relating to contribution among tort-feasors, was not permitted to have that effect. She also cites and relies upon the case of Automobile Ins. Co. of Hartford, Conn. v. Pennsylvania R. Co., 1938, 133 Ohio St. 449, 14 N.E.2d 613, wherein it was held that one of two concurrent wrongdoers would not be permitted to secure contribution not permitted under the law of Ohio by taking an assignment of the plaintiff's claim. Her claim that the transactions in question would have the effect claimed requires a

consideration of certain other claims made by her, certain other rules of law, and an analysis of the documents referred to. It is the claim of the defendant that the sum of $9,000 paid to the plaintiff, E. W. Bolton, and the sum of $3,000 paid to the plaintiff, Fannie Bolton, was paid to them "as full and complete satisfaction" for their injuries and damages and that said settlements were "an accord and satisfaction" of the "injuries and damages" of the plaintiffs and "thereby operates to defeat, bar and release" their actions. The defendant Ziegler does not point to any place in the documents executed by E. W. Bolton and Fannie Bolton, in connection with the transaction referred to, wherein it is either recited or otherwise stated that the claim of either was being released and satisfied. Her argument as to the matter of release and satisfaction necessarily has to be, and is, based upon the premise that in the light of the situation and the provisions contained in those documents the transactions amounted to and resulted in a release and satisfaction of their claims. Paragraph 1 of each document contains an agreement on the part of the promisee not to institute or maintain an action against the Denver-Chicago Trucking Company or its employee, Joseph DeMoura, or others for whose negligence it was legally liable growing out of the collisions in question. Such an agreement is usually referred to, as it is here, as a covenant not to sue. Paragraph 2 of each document contains a "loan receipt agreement" in which it is stated that the amount received is a "loan" and that from any net recovery had by such promisee from any other party, growing out of that collision, repayment will be made to the liability insurer of the Denver-Chicago Trucking Company to the extent of the sum specified. The claim of the defendant Ziegler in regard to the matter of release and satisfaction is premised on her previous assertion that if she is liable she and the Denver-Chicago Trucking Company are joint tort-feasors and that if she and the Denver-Chicago Trucking Company were joint tort-feasors there has been a release of that joint tort-feasor and that thereby she has also been released.

■ In general, three types of instruments are used in connection with arrangements between an injured person and one whom he claims is liable to him for his injuries. They are "releases," "releases with reservations," and "covenants not to sue". The matter of which type of arrangement is used is of importance where there are others who may be liable to the injured person for the same injuries. In general, the cases hold that the release of one releases all who may be liable, but that a covenant not to sue does not have that effect. The cases are in hopeless confusion as to the effect to be given a "release with reservations". Various other instruments such as a "covenant not to sue, with reservations" and a "covenant not to levy execution" have also been used. For a discussion of the latter, see 24 Southern California Law Review 466 (1951). On the general subject, see 2 Williston, Contracts, Secs. 338A to 338C, p. 994 et seq. (Williston & Thompson ed. 1936), and Secs. 338A to 338C (1952 Cumulative Supplement); Restatement, Torts, Sec. 885 (1939); and Prosser, Joint Torts and Several Liability, 25 California Law Review 413 (1937). For A.L.R. Annotations on this and closely related subjects, see Notes, 160 A.L.R. 870, 1946; 148 A.L.R. 1270, 1944; 124 A.L.R. 1298, 1940; 112 A.L.R. 78, 1938; 104 A.L.R. 931, 1936; 104 A.L.R. 846, 1936; 66 A.L.R. 206, 1930; 50 A.L.R. 1057, 1927; L.R.A.1915E, 800, 1915; 33 L.R.A.,N.S., 983, 1911; 24 L.R.A.,N.S., 451, 1910; 19 L.R.A.,N.S., 618, 1909; 14 L.R.A.,N.S., 330, 1907; 14 L.R.A.,N.S., 322, 1907; 58 L.R.A. 410, 1903; 58 L.R.A. 293, 1903. For a discussion of the Iowa cases, see Notes, 28 Iowa Law Review 515 (1943), and 7 Iowa Law Review 170 (1922).

■ Under the English common law a release under seal of one joint tort-feasor released all, satisfaction being presumed. More than 100 years ago the Iowa Legislature abolished private seals and made them of no effect. Section 974, Code of Iowa 1851, now section 537.1, Code of Iowa 1950, I.C.A. Therefore, releases under seal have not been involved in the Iowa cases. There are a number of Iowa cases in which the situation was that an injured person

had given a written release to one of two alleged tort-feasors and the other wrong-doer was contending that the effect of the instrument was to release him from liability to the injured person. Latham v. Des Moines Electric Light Co., 1942, 232 Iowa 1038, 6 N.W.2d 853; Barden v. Hurd, 1934, 217 Iowa 798, 253 N.W. 127; Phillips v. Werndorff, 1932, 215 Iowa 521, 243 N.W. 525; Middaugh v. Des Moines Ice & Cold Storage Co., 1918, 184 Iowa 969, 169 N.W. 395; Farmers Savings' Bank v. Aldrich, 1911, 153 Iowa 144, 133 N.W. 383; Snyder v. Mutual Telephone Co., 1907, 135 Iowa 215, 112 N.W. 776, 14 L.R.A.,N.S., 321; Atwood v. Brown, 1887, 72 Iowa 723, 32 N.W. 108. There are other Iowa cases having to do with the release of one of several tort-feasors in a number of different situations. Mosher v. Snyder, 1937, 224 Iowa 896, 276 N.W. 582; Crum v. McCollum, 1930, 211 Iowa 319, 233 N.W. 678; Stearns v. Chicago, R. I. & P. Ry. Co., 1914, 166 Iowa 566, 148 N.W. 128; Home Savings Bank v. Otterbach, 1907, 135 Iowa 157, 112 N.W. 769; Long v. Long, 1881, 57 Iowa 497, 10 N.W. 875; Jewett v. Wanshura, 1876, 43 Iowa 574; Metz v. Soule, Kretzinger & Co., 1875, 40 Iowa 236; Turner v. Hitchcock, 1866, 20 Iowa 310; Quigley v. Merritt, 1857, 4 Iowa 475. Other Iowa cases having a bearing on this general problem are: Disbrow v. Deering Implement Co., 1943, 233 Iowa 380, 9 N.W.2d 378; Clark v. Berry Seed Co., 1938, 225 Iowa 262, 280 N.W. 505; Paine v. Wyatt, 1933, 217 Iowa 1147, 251 N.W. 78; Iowa State Bank v. Frankle, 1924, 197 Iowa 1177, 197 N.W. 298; Southern Surety Co. v. Chicago, St. P., M. & O. Ry. Co., 1919, 187 Iowa 357, 174 N.W. 329. The effect of a judgment obtained in an action against one of several wrongdoers, and related problems, were involved in the cases of Hutchinson v. Treloar, 1940, 229 Iowa 513, 294 N.W. 787; Henry v. Henry, 1922, 192 Iowa 1346, 186 N.W. 639; Ryan v. Becker, 1907, 136 Iowa 273, 111 N.W. 426, 14 L.R.A., N.S., 329; McDonald v. Nugen, 1902, 118 Iowa 512, 92 N.W. 675; Cushing v. Hederman, 1902, 117 Iowa 637, 91 N.W. 940; Miller v. Beck, 1899, 108 Iowa 575, 79 N.W. 344; Putney v. O'Brien, 1880, 53

Iowa 117, 4 N.W. 891; and Bell v. Perry & Townsend, 1876, 43 Iowa 368. The Iowa rule in regard to "releases," as developed in the cases cited, is indicated by statements from two of those cases. In the case of Miller v. Beck, supra at page 346 of 79 N.W., the Iowa Court states: "* * * It is important that we distinguish in this connection between what the law denominates a 'release' and what is called a 'satisfaction.' A release may be given, although no part of the damage has been paid, and a technical release to one who is not a joint wrongdoer will not release another, who may have had some connection with the wrong. * * * A satisfaction, however, by whomsoever made, if accepted as such, is a bar to further proceedings on the same cause of action. * * *" In the case of Latham v. Des Moines Electric Light Co., supra at page 855 of 6 N.W.2d, the Iowa Court states: "* * * Whether a cause of action is released depends, not on the amount of money received, but on whether the amount received was accepted in full satisfaction of the claim. * * *"

■ The question as to a release with a reservation has been referred to or discussed in the following Iowa cases: Farmers' Savings Bank v. Aldrich, supra; Turner v. Hitchcock, supra; Bell v. Perry & Townsend, supra; and Miller v. Beck, supra. See also, Barden v. Hurd, supra; Snyder v. Mutual Telephone Co., supra; 28 Iowa Law Review 515 (1943); and 7 Iowa Law Review 170 (1922). The case in which the question was most extensively discussed was the case of Farmers' Savings Bank v. Aldrich, supra, in which the court stated at page 387 of 133 N.W.: "We now reach the conclusion, however, that, where the matter in controversy with one of two or more alleged wrongdoers is as to a liability common to all of them, and the settlement is made on consideration relating to the existence of such liability and its extent, it is not competent for the claimant, by expressly or impliedly reserving the right to recover an additional amount from the others on account of the same liability, to defeat the effect of the release which he gives. * * *" It is believed that the Iowa rule

in this regard is, that an injured person who receives satisfaction of his claim or cause of action against one of two claimed joint tort-feasors, cannot, by a reservation in the release given, preserve his claim or cause of action against the other claimed joint tort-feasor, but, that if by the transaction he does not receive satisfaction of his claim or cause of action, a release with reservations would be regarded as the equivalent of a covenant not to sue.

■ Covenants not to sue were involved in Frideres v. Lowden, 1945, 235 Iowa 640, 17 N.W.2d 396; Savery v. Kist, 1943, 234 Iowa 98, 11 N.W.2d 23; Greiner v. Hicks, 1941, 231 Iowa 141, 300 N.W. 727; Lang v. Siddall, 1934, 218 Iowa 263, 254 N.W. 783; and Renner v. Model Laundry, Cleaning & Dyeing Co., 1921, 191 Iowa 1288, 184 N.W. 611. While not directly involved, they were discussed in the Iowa cases of Farmers' Savings Bank v. Aldrich, supra; Snyder v. Mutual Telephone Co., supra; and Miller v. Beck, supra. It is the well established Iowa law that a covenant not to sue does not release others also liable for the same injury, and that any amount received in consideration therefor must be applied as a *pro tanto* reduction of the other wrongdoer's damages.

■ An analysis of the Iowa cases makes it clear that satisfaction has been, and is, a requisite of release. 28 Iowa Law Review 515 (1943); 7 Iowa Law Review 170 (1922). The Iowa cases relating to releases, releases with reservations, and covenants not to sue are consistent and explainable in light of the basic doctrine underlying them, *that an injured party may have but one satisfaction for a single injury.* Metz v. Soule, Kretzinger Mfg. Co., supra; Turner v. Hitchcock, supra. This principle is stated in almost every Iowa case that is in any way connected with the problem of a possible double recovery for a single injury. What the Iowa Court has tried to determine in each case is whether the injured party has received "one satisfaction," i. e., a full satisfaction, or sometimes referred to as "full compensation," for the injury suffered. If this is found to be the case, then it rightly refuses to allow any further proceeding because the injured party has been put in legal *status quo* and additional recovery would be unwarranted. In the case of Lovejoy v. Murray, 1865, 3 Wall. 1, at page 17, 70 U.S. 1, at page 17, 18 L.Ed. 129, the United States Supreme Court, U. S., stated: "* * * When the plaintiff has accepted satisfaction in full for the injury done him, from whatever source it may come, he is so far affected in equity and good conscience, that the law will not permit him to recover again for the same damages. But it is not easy to see how he is so affected, until he has received full satisfaction, or that which the law must consider as such." The Iowa Supreme Court has on several occasions stated the rule that the release of one joint tort-feasor is the release of all joint tort-feasors. Latham v. Des Moines Electric Light Co., supra at page 855 of 6 N.W.2d; Farmers' Savings Bank v. Aldrich, supra at page 385 of 133 N.W.; Long v. Long, supra at page 876 of 10 N.W.; and Turner v. Hitchcock, supra at page 317, of 20 Iowa. See, also, Federal Land Bank v. Christiansen, 1941, 230 Iowa 537, 298 N.W. 641, 645; and Bonney v. Bonney, 1870, 29 Iowa 448, 450, involving the rule in contract cases. But it seems clear that if the Iowa Supreme Court applies the maxim "a release of one joint tort-feasor releases all" at all, it does so only after it has been determined that the injured person has received full satisfaction for his injury. It is believed that the Iowa rule is correctly stated in the case of Hutchinson v. Treloar, 1940, 229 Iowa 513, 294 N.W. 787, wherein the Court states: "This court has repeatedly recognized and applied the rule that where two parties are asserted to be jointly liable in tort, a satisfaction of the cause of action against one joint tort-feasor is a satisfaction against all. * * *" And in 28 Iowa Law Review 515 (1943), at page 528, the writer summarizes the rules relating to releases, releases with reservation, and covenants not to sue, as follows: "* * * In Iowa, then, the rules work very well. Anything but full satisfaction results in *pro tanto* discharge, from whomsoever received. There can be but one satisfaction, but there can always be one."

In cases where the damages sustained are liquidated and definite, the problem of determining whether the claimant has received full satisfaction is not difficult. Cases in which personal injuries are involved sometimes present more difficulty. In the case of Middaugh v. Des Moines Ice & Cold Storage Co., supra at page 398 of 169 N.W., the Iowa Court states: "* * * The more troublesome inquiry arises when we consider whether it does or does not conclusively appear that plaintiff demanded and received from the railway company full compensation for the injuries of which he complains. When we say 'full compensation' we do not use the words in the sense of complete or adequate compensation, nor such compensation as he might possibly have been entitled to recover had the lawsuit been prosecuted to verdict and judgment. It was the right of the plaintiff to make peace with his adversary on such terms as to him seemed prudent and wise, and if they came to an agreement upon the amount which would satisfy the plaintiff's demand for the loss and injury sustained by him, and he accepted payment and executed a release on that basis, the consideration so demanded and received was in a legal sense full payment, and he cannot recover another or further payment from any other person for the same wrong. * * *" In the case of McDonald v. Nugen, supra, the Iowa Court states, at page 675 of 92 N.W.: "Following these rules to their final analysis, it is evident that the satisfaction which the law says shall bar further recovery must be such as shall be voluntarily accepted by the plaintiff. * * *" While satisfaction will usually be a monetary sum it need not be so. In the well known and frequently cited case of Turner v. Hitchcock, supra, the Iowa Court found that marriage of the injured party to one of the joint wrongdoers was a full satisfaction, and consequently the other tort-feasors were released. As to the applicability of the parol evidence rule in regard to the matter of satisfaction, see, Middaugh v. Des Moines Ice & Cold Storage Co., supra at page 400 of 169 N.W.; Ryan v. Becker, supra at page 428 of 111 N.W.; Bell v. Perry & Townsend, supra at page 372 of 43 Iowa. As to the burden of proof in the matter of satisfaction, see, Middaugh v. Des Moines Ice & Cold Storage Co., supra at page 400 of 169 N.W.; Ryan v. Becker, supra at page 428 of 111 N.W.; Bell v. Perry & Townsend, supra at page 372 of 43 Iowa; and Bonney v. Bonney, supra at page 450, of 29 Iowa. See also, Notes, 22 Minnesota Law Review 692, 703 (1938), and 28 Iowa Law Review 515 (1943).

In some cases the sum received by the injured person is in dispute and in some cases the terms of the arrangement under which it is received are in dispute. In the present cases, however, there is no dispute as to the sum received by either plaintiff, and the terms and conditions under which it was paid and received are clearly stated and set forth in the documents referred to. The defendant Ziegler does not contend that the sum of $9,000 received by E. W. Bolton represents or constitutes all of the damages he sustained or that the sum of $3,000 represents or constitutes all of the damages Fannie Bolton sustained. Those plaintiffs might have, if they desired, satisfied and released their respective claims for less than the amount of damages sustained by them. However, in the documents referred to, those plaintiffs clearly and definitely negatived the idea that the sums referred to represented satisfaction of their claims.

It seems clear that the agreements contained in the instrument in question, relating to the matter of the plaintiffs' not bringing an action against the Denver-Chicago Trucking Company or its employees, constitute covenants not to sue under the Iowa cases. In the case of Greiner v. Hicks, supra, as in subsequent Iowa cases involving covenants not to sue, the Iowa Court held that the amount received by a claimant from an alleged joint tort-feasor under a covenant not to sue should be applied as a *pro tanto* reduction upon the damages recoverable from another alleged joint tort-feasor. It is evident that the real battle in the present proceedings is as to the matter of the sums of $9,000 and $3,000 being applied as *pro tanto* reductions upon the damages recoverable by the plaintiffs from the defendant Ziegler. It is the claim of the plaintiffs that under the docu-

ments referred to they are not required to make such application. If the documents in question contained only the covenants not to sue, there would be no doubt but that the application would have to be made. However, those documents also contain loan receipt agreements. In the case of Greiner v. Hicks, supra, after referring to decisions holding that amounts received under covenants not to sue should be applied, the Iowa Court at page 731 of 300 N.W. stated: "* * * The theory underlying these decisions is that while a party is entitled to full compensation for his injuries, there can be only one satisfaction therefor. This court has repeatedly recognized the universal rule that there can be but one satisfaction for an injury. * * *" It is the contention of the plaintiffs that the loan receipt agreements are valid and that under them they would not receive more than the total amount of their damages because of their obligation to repay any net recovery up to the amount of the loan. The plaintiffs also argue that if the covenants not to sue stood alone, and no applications were made, they would be receiving double satisfaction, but since under the loan receipt agreements the sums received under the covenants not to sue are repayable to the Denver-Chicago Trucking Company or its liability insurer, they will only receive the amount of damages to which they are entitled. The theory of the plaintiffs seems to be, therefore, that the rule of *pro tanto* reduction was adopted to prevent double recovery on the part of a claimant only, and where the situation is such that this will not be the result, then the rule is not applicable. The theory of the defendant Ziegler seems to be that while in the case of Greiner v. Hicks, supra, application was required to prevent unjust recovery on the part of the claimant, yet the rule of *pro tanto* reduction is not limited to such a situation and that it may also be invoked to prevent unjust recovery of indemnity or contribution by one alleged joint tort-feasor, when such recovery is contrary to the well established law or public policy of this state. The defendant Ziegler challenges the validity of loan receipts in general. A considerable portion of the oral and written arguments of the parties are devoted to that matter. In connection therewith a number of cases are cited.

Loan receipts were developed as a means of preventing carriers and bailees from inequitably shifting the burden of loss that was rightfully theirs onto the shoulders of the shipper's or bailor's insurance carrier. In such situations, loan receipts are usually considered valid arrangements and have been generally upheld. Typical cases upholding the "loan receipt" arrangement in this type of case are: Luckenbach v. W. J. McCahan Sugar Refining Co., 1918, 248 U.S. 139, 39 S.Ct. 53, 63 L.Ed. 170, 1 A.L.R. 1522; Continental Distributing Co. v. Reading Co., 3 Cir., 1948, 168 F.2d 967; Dixey v. Federal Compress & Warehouse Co., 8 Cir., 1943, 132 F.2d 275; The J. L. Luckenbach, 2 Cir., 1933, 65 F.2d 570; The Turret Crown, 2 Cir., 1924, 297 F. 766, affirming opinion in, D.C.S.D.N.Y.1922, 282 F. 354; Frederick Leyland & Co., Ltd. v. Hornblower, 1 Cir., 1919, 256 F. 289; Bradley v. Lehigh Valley R. R. Co., 2 Cir., 1907, 153 F. 350, affirming opinion in, D.C.S.D.N.Y.1906, 145 F. 569; Pennsylvania R. R. v. Burr, 2 Cir., 1904, 130 F. 847; Nebraska Co-op Creameries v. Des Moines Transp. Co., D.C.S.D. Iowa 1936, 16 F.Supp. 853; Philippine Refining Corp. v. U. S. (The Archer) D.C.E.D. N.Y.1928, 29 F.2d 134, affirmed, 2 Cir., 1930, 41 F.2d 1010; Southern Cotton Oil Co. v. Merchants' & Miners' Transp. Co., D.C.S. D.N.Y.1910, 179 F. 133; Graysonia, Nashville & Ashton R. Co. v. Newberger Cotton Co., 1926, 170 Ark. 1039, 282 S.W. 975; DeJean v. Louisiana Western R. Co., 1928, 167 La. 111, 118 So. 822; Southard v. Minneapolis St. P. & S. S. M. Ry. Co., 1895, 60 Minn. 382, 62 N.W. 442; Kalle & Co., Inc. v. Morton, 1915, 216 N.Y. 655, 110 N.E. 1043, affirming opinion in, 156 App.Div. 522, 141 N.Y.S. 374; Gulf, C. & S. F. R. Co. v. Zimmerman, 1891, 81 Tex. 605, 17 S.W. 239. See also, Inman v. South Carolina R. Co., 1889, 129 U.S. 128, 9 S.Ct. 249, 32 L.Ed. 612. Cf., Pacific Fire Ins. Co. v. Pennsylvania Sugar Co., 3 Cir., 1934, 72 F.2d 958, certiorari denied, 1935, 293 U.S. 623, 55 S.Ct. 237, 79 L.Ed. 710, rehearing denied, 1935, 293 U.S. 633, 55 S.Ct. 345, 79

L.Ed. 718. Some of the cases, however, have held the "loan receipt" arrangement invalid in this type of situation and that it constituted a "payment" rather than a "loan." L. W. & P. Armstrong v. The Mormacmor, 2 Cir., 1952, 196 F.2d 752; Roos v. Philadelphia, W. & B. R. Co., 1901, 199 Pa. 378, 49 A. 344; Deming v. Merchants' Cotton-Press & Storage Co., 1891, 90 Tenn. 306, 17 S.W. 89, 13 L.R.A. 518; Lancaster Mills v. Merchants' Cotton-Press & Storage Co., 1890, 89 Tenn. 1, 14 S.W. 317. Cf., Automobile Ins. Co. v. Springfield Dyeing Co., 3 Cir., 1940, 109 F.2d 533; China Fire Ins. Co. v. Davis, 2 Cir., 1931, 50 F.2d 389, 76 A.L.R. 1259.

A similar question, of whether an advancement by an insurer to its insured under a "loan receipt" agreement is to be treated as a "loan" or a "payment," has frequently arisen in cases not involving carriers or bailees. Typical cases in which such an advancement was treated as a valid loan are: Aetna Insurance Co. v. Henry DuBois Sons Co., D.C.S.D.N.Y.1943, 53 F.Supp. 516, affirmed, 2 Cir., 1944, 144 F.2d 262, certiorari denied, 1945, 323 U.S. 797, 65 S.Ct. 440, 89 L.Ed. 636; Peninsular & O. S. S. Co. v. Atlantic Mutual Insurance Co., D.C.E.D.Pa.1911, 185 F. 172; National Fire Ins. Co. of Hartford, Conn. v. Kinney, 1932, 224 Ala. 586, 141 So. 350; Gillies v. Michigan Millers Mut. Fire Ins. Co., 1950, 98 Cal.App.2d 743, 221 P.2d 272; Colonial Finance Corp. v. Schacht Motor Truck Co., 1932, 52 R.I. 317, 160 A. 787; Homeland Insurance Co. of America v. Carolina Insurance Co., 1952, 261 Wis. 378, 52 N.W.2d 782. But some of the cases hold such an advancement to be a "payment" rather than a "loan." McKenzie v. North River Insurance Co., 1951, 257 Ala. 265, 58 So.2d 581; Yezek v. Delaware L. & W. R. Co., 1941, 176 Misc. 553, 28 N.Y.S.2d 35.

Loan receipts have also been frequently used as a means of preventing subrogation of the insurer who has advanced all or part of a loss pending the outcome of litigation against the actual wrongdoer. An insurer prefers not to be made a formal party because of the possible prejudicial effect it may have upon the jury. Believing that a ligitimate purpose was being served, many courts have upheld loan receipts as valid arrangements for that purpose. The question usually being whether the insured party remains the real party in interest. Some of the cases which upheld the validity of the "loan receipt" transaction and prevented subrogation so that the recipient of the loan remained the real party in interest are: Augusta Broadcasting Co. v. United States, 5 Cir., 1948, 170 F.2d 199; Dixey v. Federal Compress & Warehouse Co., supra; The Plow City, 3 Cir., 1941, 122 F.2d 816, certiorari denied 1942, 315 U.S. 798, 62 S.Ct. 579, 86 L.Ed. 1199; The Seatrain-Havanna, 2 Cir., 1939, 103 F.2d 772; Perrera v. Smolowitz, D.C.E.D.N.Y.1951, 11 F.R.D. 377; Merriman v. Cities Service Gas Co., D.C.S.D.Mo.1951, 11 F.R.D. 165; Williams v. Union Pac. R. Co., D.C.Neb. 1950, 94 F.Supp. 174; Capo v. C–O Two Fire Equipment Co., D.C.N.J.1950, 93 F. Supp. 4; Yale Transportation Corp. v. Yellow Truck & Coach Mfg. Co., D.C. N.Y.1944, 3 F.R.D. 440; Mill Factors Corporation v. Ming Toy Dyeing Co., D.C. S.D.N.Y.1941, 41 F.Supp. 467; Price & Pierce v. Jarka Great Lakes Corp., D.C. W.Mich.1941, 37 F.Supp. 939; Eber Bros., Wine & Liquor Corp. v. Fireman's Ins. Co., D.C.S.D.N.Y.1939, 30 F.Supp. 412; Hamilton v. Pulaski County, 1952, 86 Ga.App. 705, 72 S.E.2d 487; Green v. Johns, 1952, 86 Ga.App. 646, 72 S.E.2d 78; V. Rivera S.–C. v. Texas & N. O. R. Co., 1947, 211 La. 969, 31 So.2d 180, 172 A.L.R. 791; Staple Cotton Co-op. Ass'n v. Yazoo & M. V. R. Co., 1940, 189 Miss. 387, 197 So. 828; Kossmehl v. Millers Nat. Ins. Co., 1945, 238 Mo.App. 671, 185 S.W.2d 293; Shiman Bros. & Co. v. Nebraska Nat. Hotel Co., 1943, 143 Neb. 404, 9 N.W.2d 807; Hartzberg v. New York Cent. R. Co., 1946, 295 N.Y. 703, 65 N.E.2d 337, certiorari denied, 1946, 328 U.S. 849, 66 S.Ct. 1121, 90 L.Ed. 1622; Brown v. Smith, 1947, 210 S.C. 405, 42 S.E.2d 883; Houston Transit Co. v. Goldston, Tex.Civ.App.1949, 217 S.W.2d 435; Liner v. Mittlestadt, 1950, 257 Wis. 70, 42 N.W.2d 504; Kooser v. West Penn. Rys., Fayette Co., 1941, 42 Pa. Dist. & Co. R. 701. Accord, Western Fire Insurance Co. v. Word, 5 Cir., 1942, 131 F.2d 541; Kerna v. Trucking, Inc., D.C.

W.D.Pa.1944, **3** F.R.D. 365; Pettit v. Geo. A. Rheman Co., Inc., D.C.N.D.Ga.1940, 1 F.R.D. 271; McCann v. Dixie Lake & Realty Co., 1932, 44 Ga.App. 700, 162 S.E. 869; Levin v. Hanson Garage Inc., Fayette Co., 1941, 44 Pa.Dist. & Co. R. 21. See, Insurance Co. of North America v. United States, D.C.E.D.Va.1948, 76 F.Supp. 951, 953. Cf., The Ivaran, D.C.S.D.N.Y.1942, 46 F.Supp. 394. But some courts have refused to treat the recipient of an advancement under a "loan receipt" transaction as the real party in interest, holding the insurer was subrogated even though the funds were advanced as a "loan." Cavallora & Son v. U. S., D.C.Conn. March 31, 1948,[1] referred to in, Van Orman, The Loan Receipt in New York, Insurance Law Journal 1950: 313, 317; Hoxie v. Americus Auto Co., 1946, 73 Ga.App. 686, 37 S.E.2d 808; Cleveland Paint & Color Co. v. Bauer Mfg. Co., 1951, 155 Ohio St. 17, 97 N.E.2d 545. Cf. Charles Miller Coat Co., Inc. v. Myron Herbert, Inc., 1949, 300 N.Y. 477, 88 N.E. 2d 659, affirming opinion in, Sup., 1949, 86 N.Y.S.2d 736; Cocoa Trading Corp. v. Bayway Terminal Corp., 1943, 290 N.Y. 697, 49 N.E.2d 632, rehearing denied, 1943, 290 N.Y. 865, 50 N.E.2d 247; Cunningham v. Seabord Airlines R. Co., 1905, 139 N.C. 427, 51 S.E. 1029, 2 L.R.A., N.S., 921.

Most of the loan receipt litigation involving real party in interest has arisen in the New York State courts where the problem was finally resolved by the Legislature. No useful purpose would be served by citing the many New York lower court decisions on the subject. A number of writers have discussed and analyzed the New York cases and the related problems. Johnson, The Proper Party in a Subrogation Action, Insurance Law Journal 1945: 199; Ticktin, Real Party in Interest Under Loan Receipts, Vol. 44, No. 5, Best's Fire and Casualty News 71 (Sept.1943); Van Orman, The Loan Receipt in New York, Insurance Lane Journal 1950: 313; Zipser, The Case of the Loan Receipts, Insurance Law Journal 1948: 820; Zipser, Fire Company Action on Loan Agreement Needed to Secure Same Rights as Casualty Companies, Insurance Advocate (Jan. 22, 1944); Loan Receipt Transactions Between Insurer and Insured, 114 New York Law Journal 80 (July 13, 1945), reprinted in two parts in, Insurance Law Journal 1945: 528–532 & 592–599; Report of the Committee on Subrogation Procedure to Eastern Loss Executive's Conference (1945), cited in, Note, 32 Cornell Law Quarterly 279, 286, as containing authoritative statements as to the proper form of "loan receipts;" Notes, 32 Cornell Law Quarterly 279 (1946), 24 New York University Law Quarterly Review 171 (1949); 14 Albany Law Review 196 (1950).

The validity of loan receipts often arises in cases where the problems of determining whether it is a payment or loan, and the real party in interest issue are both involved. L. W. & P. Armstrong v. The Mormacmor, supra; Dixey v. Fed. Compress & Warehouse Co., supra; Sorenson v. Boston Ins. Co., 4 Cir., 1927, 20 F.2d 640, certiorari denied, 1927, 275 U.S. 555, 48 S. Ct. 116, 72 L.Ed. 423; Judd v. New York & T. S. S. Co., 3 Cir., 1902, 117 F. 206; The Guiding Star, D.C.S.D.Ohio 1893, 53 F. 936, affirmed, 6 Cir., 1894, 62 F. 407; J. G. Boswell Co. v. W. D. Felder & Co., 1951, 103 Cal.App.2d 767, 230 P.2d 386; Ouachita Parish Police Jury v. Northern Ins. Co. of New York, La.App., 1937, 176 So. 639; Newco Land Co. v. Martin, 1948, 358 Mo. 99, 213 S.W.2d 504; Kossmehl v. Millers Nat. Ins. Co., 1945, 238 Mo.App. 671, 185 S.W.2d 293; Sullivan v. Naiman, 1943, 130 N.J.L. 278, 32 A.2d 589; Sosnow, Kranz & Simcoe, Inc. v. Storatti Corp., 1946, 295 N.Y. 675, 65 N.E. 2d 326; Cadillac Auto Company v. Fisher, 1934, 54 R.I. 264, 172 A. 393; Phillips v. Clifton Mfg. Co., 1944, 204 S.C. 496, 30 S.E.2d 146, 157 A.L.R. 1255. See, Wittig v. Canada S. S. Lines, Ltd., D.C.W.D.N.Y. 1932, 59 F.2d 428, 429.

Loan receipt cases have arisen in a number of ways with a variety of issues and results. In two cases advancements under "loan receipts" in the nature of a gratuity, made by a stranger to the party suffering the loss, were held to be valid. First

---

1. No opinion for publication.

National Bank of Ottowa v. Lloyds of London, 7 Cir., 1940, 116 F.2d 221, 132 A.L.R. 599; De Lanoy, Kipp & Swan v. New Amsterdam Cas. Co., 1939, 171 Misc. 342, 11 N.Y.S.2d 625. Several cases have held the effect of a "loan receipt" agreement would be to violate state law or public policy and have, therefore, held them invalid. American Alliance Ins. Co. v. Capital National Bank, 1946, 75 Cal.App.2d 787, 171 P.2d 449; Scarborough v. Bartholomew, City Ct., Elmira, 1940, 22 N.Y.S.2d 635, affirmed, 1941, 263 App.Div. 765, 30 N.Y.S. 2d 971, appeal denied, 1942, 32 N.Y.S.2d 807; Simpson v. Hartranft, 1935, 157 Misc. 387, 283 N.Y.S. 754. Contra, Klukas v. Yount, 1951, 121 Ind.App. 160, 98 N.E.2d 227; National Shawmut Bank v. Johnson, 1945, 317 Mass. 485, 58 N.E.2d 849. Occasionally a loan receipt case involves two liability insurers, the loan receipt being made pending the outcome of the litigation to determine which had the effective coverage. Heuer v. Truck Ins. Exchange, 1942, 51 Cal.App.2d 497, 125 P.2d 90; Parrette v. Citizens Cas. Co. of N. Y., 1949, 5 N.J.Super. 258, 68 A.2d 758; Thompson Heating Corp. v. Hardware Indemnity Ins. Co., 1943, 72 Ohio App. 55, 50 N.E.2d 671. Several loan receipt cases involved advancements made by a fidelity insurer. J. G. Boswell Co. v. W. D. Felder & Co., supra; American Alliance Ins. Co. v. Capital National Bank, supra; Newco Land Co. v. Martin, supra. Other cases involving loan receipt transactions are: Eugene B. Smith Co. v. Eloy Gin Corp., 9 Cir., 1952, 195 F.2d 743; H. Warshaw & Sons v. Standard Marine Ins. Co., D.C. S.D.N.Y.1939, 27 F.Supp. 974; The Grecian, D.C.S.D.N.Y.1934, 8 F.Supp. 580, reversed on other grounds, 2 Cir., 1935, 78 F.2d 657; Automatic Sprinkler Corp. v. Robinson-Slagle Lumber Co., La.App., 1933, 147 So. 542; Auto Ins. Co. of Hartford, Conn. v. Eastern Machinery Co., 1940, 63 Ohio App. 203, 25 N.E.2d 954.

In only a few loan receipt cases have there been personal injury actions where joint tort-feasors were involved. Wilson v. Anderson, 1945, 113 Colo. 396, 157 P.2d 690; Klukas v. Yount, supra; State Farm Mutual Ins. Co. v. Hall, 1942, 292 Ky. 22, 165 S.W.2d 838; Blair v. Espeland, 1950, 231 Minn. 444, 43 N.W.2d 274. None of these cases are determinative of the issues involved in the case at bar.

The following materials are of general application to loan receipts. 6 Appleman, Insurance Law and Practice, Sec. 4099, pp. 610–612; II Blashfield, Cyclopedia of Automobile Law & Practice, Sec. 7088, pp. 256–257; 8 Couch, Insurance, Secs. 2004, 2091 (1929) & III Couch, Insurance, Sec. 2091 (1945 Supp.); 3 Moore's Federal Practice, Sec. 1349 (2d ed. 1948); Gwertzman, The History and Function of the Loan Agreement in its Relation to Insurance Contracts, Insurance Advocate (April 24, 1943); 64 Harvard Law Review 1203 (1951); 38 Harvard Law Review 117 (1924); 95 University of Pennsylvania Law Review 231 (1946); 89 University of Pennsylvania Law Review 395 (1941); 29 American Jurisprudence, Insurance, Sec. 1337; 46 C.J.S., Insurance, § 1209; Annotations, 157 A.L.R. 1261, 1945; 132 A.L.R. 607, 1941; 1 A.L.R. 1528, 1919. See also, Annotations in 157 A.L.R. 1242, 1945; 96 A.L.R. 865, 1935. See, Davis, Subrogated Insurer As Real Party in Interest, 9 Kentucky State Bar Journal 72, 74 (1945); Note, 9 Iowa Law Review 291, 295 (1924); 37 Harvard Law Review 901, 902 (1924).

There are no Iowa cases involving loan receipts. No cases have been cited or otherwise brought to the attention of the Court where an alleged joint tort-feasor in his arrangements with a person making a claim against him for personal injuries has made use of an instrument which contained both a loan receipt and a covenant not to sue. There is no claim made by the plaintiffs that they are not bound by the covenants not to sue. They make no claim that the Denver-Chicago Trucking Corporation or its liability insurer has elected to waive their rights under the covenants not to sue and stand only upon the loan receipt agreements. If the loan receipt agreements stood alone and were, under the circumstances of the present case, valid as against the defendant Ziegler, then the sums referred to would not have to be applied by the plaintiffs upon their recoveries. If the covenants not to sue stood

alone, the sums referred to would undoubtedly have to be applied upon such recoveries. In legal effect, the two agreements are repugnant one to the other. The question would seem to be, which of the two repugnant provisions is to prevail? The Iowa Supreme Court has not passed upon the question. The question has not been discussed in any of the cases cited nor in any of the literature on loan receipts referred to. The basis of the Iowa rule of *pro tanto* reduction is the prevention of unjust recoveries. There is no reason for assuming that the Iowa Supreme Court is concerned only with the prevention of unjust recoveries by claimants and has no concern as to unjust recoveries by joint tort-feasors. As heretofore noted, the recovery of indemnity or contribution, from the defendant Ziegler, under the situation in the present cases would constitute an unjust recovery in light of the Iowa law. It is believed that the doctrine of *pro tanto* reduction is also applicable to prevent unjust recoveries of indemnity or contribution by joint tort-feasors. In a note in 95 University of Pennsylvania Law Review 231 (1946), discussing the device of a loan receipt, at page 234 the following statement appears: " * * * But the use of a legal device, proper in its setting, should not be extended to a situation foreign to its nature for the purpose of thwarting the decisions of the courts."

It is the view of this Court that it would thwart Iowa law and Iowa policy to permit the loan receipt agreements in question to have the effect of preventing the application of the sums of $9,000 and $3,000 upon the recoveries of the plaintiffs against the defendant Ziegler, and that the documents in question should, as to the defendant Ziegler, have the status of covenants not to sue. It is the holding of the Court that the defendant Ziegler is entitled to have the sums of $9,000 and $3,000 applied *pro tanto* towards the reduction of any recoveries had against her by the plaintiffs.

As heretofore noted, the defendant Ziegler challenges the validity of loan receipts in general. In that connection she relies upon several of the cases heretofore cited in which they were held invalid. However,

as noted, many courts have held their use to be proper in certain settings. In the present cases the loan receipt agreements are being used in an attempt to thwart the law of Iowa relating to contribution among joint tort-feasors. The holding of the Court herein is limited to the holding that such use is not proper. It is not a holding as to the validity of loan receipt agreements in other situations, either under the law generally or under the law of Iowa.

■ The holding of the Court that the documents in question have the status of covenants not to sue, as to the defendant Ziegler, are determinative of her motion that the Denver-Chicago Trucking Company, or its liability insurer, be made parties to the respective actions. It is believed that covenantees in covenants not to sue are not necessary parties, nor real parties in interest, in litigation between the covenantor and another alleged joint tort-feasor. It might be noted that in the case of Dixey v. Federal Compress & Warehouse Company, 1943, 132 F.2d 275, the United States Court of Appeals for the Eighth Circuit held that the lendor under a loan receipt agreement is not a real party in interest. Since the insurance policy of the Denver-Chicago Trucking Company is one of liability, the matter of subrogation is not involved.

■ The last question involves the matter of handling the application of the sums received by the plaintiffs under the covenants not to sue in jury cases. The present cases are jury cases. The facts of the payments and the amount of the payments are not in dispute. The problems connected with the making of such setoffs and the different methods employed are set forth in a note in 28 Iowa Law Review 515, 524, 525 (1943) as follows:

"There are two possible methods of securing this set-off. The one is to allow the jury to render a verdict, admitting no evidence of the covenant not to sue, and have the judge make the deduction. The other is to place evidence before the jury with instructions to render a verdict less the amount received. Either of these

methods is workable in a case where the damages are fixed. Neither is very satisfactory where the damages are uncertain. The first leaves it an open question as to whether the verdict was not determined on the common-sense view of the laymen that the other one at fault should pay something, for it would indeed be an unusual trial in which a juror could hear and understand the circumstances of the tort without realizing that there was another besides the defendant who had caused the harm. Unfortunately, something like this, based on an innate sense of fairness, is an idea not easily eradicated from the juror's mind by instructions. The second procedure works to the disadvantage of the defendant for, as one Illinois court put it, who is to say whether or not the jury actually estimated the injury to the plaintiff and deducted what he had already received."

See also, 13 Cornell Law Quarterly 473 (1928); 18 Michigan Law Review 680, 682 (1920); 22 Minnesota Law Review 692, 703 (1938); 8 Washington & Lee Law Review 105, 110 (1951). Federal cases involving the matter are so few in number that it cannot well be said that a federal rule has been established. In the case of Pacific States Lumber Co. v. Bargar, 9 Cir., 1926, 10 F.2d 335, at page 337, in which the defendant was entitled to a reduction because of the sum of $2,000 received by the plaintiff from a stevedoring company under a covenant not to sue, the following appears: "The jury assessed plaintiff's damages at $4,500. Under the court's instructions they credited thereon the $2,000 paid by the stevedoring company. * * *" No decisions of the United States Supreme Court or the United States Court of Appeals for the Eighth Circuit have been cited or otherwise called to the attention of the Court involving the matter. In the case of Frideres v. Lowden, 1945, 235 Iowa 640, 17 N.W.2d 396, at page 401 the following appears: "* * * The verdict and judgment were for $7840.82. However, plaintiff had received $2000 in return for a covenant not to sue George Faber and

the estate of Mrs. Faber as a result of the collision. The jury was instructed that defendants were entitled to a credit of this $2000, with interest from date of payment, upon any amount it should allow plaintiff. See on this question Greiner v. Hicks, 231 Iowa 141, 146, 147, 300 N.W. 727, 730, 731. Evidently the jury found the pecuniary loss to the estate was substantially $10,000. Presumably the verdict would have been for that amount if the payment by the Fabers had not been made. * * *" In the case of Greiner v. Hicks, supra at page 730 of 300 N.W., the following appears: "It appears in evidence without dispute that appellee received $2,750 from the Tri-City Packing Company and in return executed a covenant not to sue said company, its insurer, its employee Babcock or any other employee 'for or on account of damages for the death of Doniel Greiner.' * * * In Instructions 24 and 25, the court told the jury that defendant was entitled to a credit of $2,750 upon any amount they should allow plaintiff. * * *" In neither of the Iowa cases just referred to was any question raised as to the propriety of the manner in which the application was handled. In cases such as the present cases, where the sums paid are not in dispute, it is believed that the preferable procedure would be for the Court to inform the jury that sums of $9,000 and $3,000 have been received by the respective plaintiffs and instruct the jury that those sums are to be credited upon their recoveries. In the interest of clarity, it would seem desirable that the forms of verdicts provide that the jury first set out the total award of damages before the credit, and then apply the credit, and return a verdict for the balance, if any, remaining.

In some jurisdictions contribution is allowed between joint tort-feasors. For cases dealing with the effect of a settlement by one joint tort-feasor with the injured party upon such tort-feasor's right to contribution from another joint tort-feasor, see, Brown & Root v. United States, 5 Cir., 1952, 198 F.2d 138, affirming, D.C.S.D.Tex. 1950, 92 F.Supp. 257; Lacewell v. Griffin 1949, 214 Ark. 909, 219 S.W.2d 227, 8 A.L. R.2d 189; Employers Mut. Cas. Co. v.

Chicago, St. P., M. & O. Ry. Co., 1951, 235 Minn. 304, 50 N.W.2d 689; and Annotation, 8 A.L.R.2d 196, 1949.

Orders and rulings will be made in accordance with this opinion.